UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

DANIEL KASSEL,

        Plaintiff,

*-against-*

ROBERT MOYNIHAN, JR., KATIE GLORE, JOSHUA
PHELPS, CARTUNA, L.L.P., and COMEDY CENTRAL,
a subsidiary of VIACOM, INC.,
        Defendants.

————————————————————————X

Case No.:  23-cv-06958-JLR

**<u>MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................... 1

II. SUMMARY OF THE COMPLAINT................................................... 1

III. SUMMARY OF THE WORKS................................................................ 3

    A. Happily Everglades After ......................................................... 3

    B. Loafy ........................................................................................ 4

IV. PURPORTED SIMILARITIES BETWEEN *HAPPILY* AND *LOAFY* ............................ 6

V. RELEVANT LEGAL STANDARDS ................................................... 8

    A. Legal Standards Governing A Motion To Dismiss................................ 8

    B. Legal Standards Governing Copyright Infringement Claims ................................ 9

        1. The Absence Of Copyright Infringement Can Be Determined Solely Based On The Works Themselves. ........................................................... 10

        2. This Court Should Apply The "Discerning Ordinary Observer" Test Because The Purported Similarities Between The Works Consist Almost Entirely Of Unprotectable Elements. ........................................... 12

        3. Copyright Law Does Not Protect Generalized Themes or Ideas or Stock Elements........................................................................ 13

VI. PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE CLAIM OF COPYRIGHT INFRINGEMENT AS A MATTER OF LAW BECAUSE THE WORKS ARE COMPLETELY DISSIMILAR.............................................. 15

    A. Plaintiff's Alleged "Similarities," Most Of Which Are Not Even Based On The Works Themselves, Cannot Support A Copyright Infringement Claim........ 15

        1. The Six Comparisons That Are *Not* Based On Both *Happily* and *Loafy* Cannot Support A Copyright Infringement Claim. ....................... 15

        2. The Four Comparisons That *Are* Based On Both *Happily* and *Loafy* Cannot Support A Copyright Infringement Claim.................................. 17

    B. There Is No Substantial Similarity Between The Works' Respective Plots, Characters, Themes, Sequence, Pace, Setting, Or Total Concept And Feel......... 19

        1. The Plot Of *Loafy* Is Substantially Dissimilar To *Happily*....................... 19

i

2.      The Characters In *Loafy* And *Happily* Are Substantially Dissimilar. ...................................................................................... 21

3.      The Settings, Themes, And "Total Concept And Feel" Of The Works Are Substantially Dissimilar. ....................................... 23

VII.    PLAINTIFF'S REMAINING CLAIMS FAIL, AS WELL. ........................................... 24

VIII.   CONCLUSION ...................................................................................................... 24

300026286

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Warner Bros. Pictures Network*,
  No. 05CV5211 (SLT)(LB), 2007 WL 1959022 (E.D.N.Y. June 29, 2007),
  *aff'd sub nom. Adams v. Warner Bros. Pictures*, 289 F. App'x 456 (2d Cir.
  2008) .......................................................................................................................9, 12

*Alexander v. Murdoch*,
  502 F. App'x 107 (2d Cir. 2012) .........................................................................13

*Allen v. Scholastic Inc.*,
  739 F. Supp. 2d 642 (S.D.N.Y. 2011).........................................................14, 20, 21

*Arden v. Columbia Pictures Indus., Inc.*,
  908 F. Supp. 1248 (S.D.N.Y. 1995)....................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................8, 9

*Barbash v. STX Fin., LLC*,
  No. 20-CV-123 (DLC), 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020) ..................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................8, 9

*Bell v. Blaze Magazine*,
  No. CV-99-12342, 2001 WL 262718 (S.D.N.Y. Mar. 16, 2001) ...........................12

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) .............................................................................14

*Boyle v. Stephens, Inc.*,
  No. CV-97-1351, 1998 WL 80175 (S.D.N.Y. Feb. 25, 1998)................................12

*Brass v. Am. Film Tech., Inc.*,
  987 F.2d 142 (2d Cir. 1993)...............................................................................9

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004)...............................................................................24

*Buckman v. Citicorp*,
  No. CV-95-0773, 1996 WL 34158 (S.D.N.Y. Jan. 30, 1996), *aff'd*, 101 F.3d
  1393 (2d Cir. 1996)..........................................................................................12

*Burch v. Pioneer Credit Recovery*,
  551 F.3d 122 (2d Cir. 2008)...............................................................................9

*Castle Rock Entm't v. Carol Publ'g Grp.*,
  150 F.3d 132 (2d Cir. 1998)............................................................................11

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).............................................................................9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)...........................................................................................24

*Durham Indus., Inc. v. Tomy Corp.*,
  630 F.2d 905 (2d Cir. 1980).............................................................................13

*Effie Film, LLC v. Pomerance*,
  909 F. Supp. 2d at 273 (S.D.N.Y. 2012)..........................................................13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).........................................................................................10

*Gaste v. Kaiserman*,
  863 F.2d 1061 (2d Cir. 1988)...........................................................................11

*Gottlieb Dev., LLC v. Paramount Pictures Corp.*,
  590 F. Supp. 2d 625 (S.D.N.Y. 2008).........................................................9, 12

*Hoehling v. Universal City Studios, Inc.*,
  618 F.2d 972 (2d Cir. 1980).............................................................................14

*Hogan v. DC Comics*,
  48 F. Supp. 2d 298 (S.D.N.Y. 1999)....................................................12, 21, 22

*Hudson v. Universal Studios, Inc.*,
  No. 04 CV 6997(GEL), 2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008), *aff'd*,
  369 F. App'x 291 (2d Cir. 2010) ................................................................13, 21

*Jones v. CBS, Inc.*,
  733 F. Supp. at 748 (S.D.N.Y. 1990)...............................................................23

*Jorgensen v. Epic/Sony*,
  351 F.3d 46 (2d Cir. 2003)...............................................................................11

*Kleinman v. Elan Corp.*,
  706 F.3d 145 (2d Cir. 2013).............................................................................10

*Knitwaves, Inc. v. Lollytogs, Ltd.*,
  71 F.3d 996 (2d Cir. 1995)...............................................................................13

*Laureyssens v. Idea Grp., Inc.*,
  964 F.2d 131 (2d Cir. 1992).............................................................................11

300026286

*Mallery v. NBC Universal, Inc.*,
   No. 07 CV 225, 2007 WL 4258196 (S.D.N.Y. Dec. 3, 2007), *aff'd* 331 F.
   App'x 821 (2d Cir. 2007) ............................................................................................20

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ...........................................................................................9

*Mottola v. Denegre*,
   No. 12-CV-3465 (LAP), 2012 WL 12883775 (S.D.N.Y. June 8, 2012) ...................................9

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ...............................................................................10, 11, 12

*Repp v. Webber*,
   132 F.3d 882 (2d Cir. 1997) ....................................................................................10, 11

*Reyher v. Children's Television Workshop*,
   533 F.2d 87 (2d Cir. 1976) .................................................................................14, 20, 23

*Sazerac Co. v. Falk*,
   861 F. Supp. 253 (S.D.N.Y. 1994) ....................................................................................12

*Sheldon Abend Revocable Trust v. Spielberg*,
   748 F. Supp. 2d 200 (S.D.N.Y. 2010) ..........................................................................20, 21

*Shipman v. R.K.O. Radio Pictures*,
   100 F.2d 533 (2d Cir. 1938) ...........................................................................................12

*Sinicola v. Warner Bros., Inc.*,
   948 F.Supp. 1176 (E.D.N.Y. 1996) ...................................................................................17

*Starobin v. King*,
   137 F. Supp. 2d 93 (N.D.N.Y. 2001) .................................................................................14

*Streetwise Maps, Inc. v. Vandam, Inc.*,
   159 F.3d 739 (2d Cir. 1998) ...........................................................................................16

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986) ................................................................................12, 13, 14, 21

*Warner Bros. Inc. v. Am. Broad. Cos, Inc.*,
   720 F.2d 231 (2d Cir. 1983) ...........................................................................................13

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996) ...............................................................................11, 12, 13, 14

## Statutes

17 U.S.C. § 301(a) ............................................................................................24

Copyright Act, U.S.C. tit. 17ac ...............................................................................24

Lanham Act, 15 U.S.C. § 1051 *et seq.*..........................................................................2, 24

N.Y. Gen. Bus. Law § 349(a) ..............................................................................................2

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................1, 10

**Regulations**

37 C.F.R. § 202.1(a).............................................................................................................15

**Other Authorities**

https://tvtropes.org/pmwiki/pmwiki.php/Main/EyeRecall ............................................18

U.S. Copyright Office Circular No. 33 ("Works Not Protected by Copyright").........17

300026286

Defendants Robert Moynihan, Jr., Cartuna LLC (incorrectly sued as "Cartuna, L.L.P." ("Cartuna")) and Comedy Partners, incorrectly sued as "Comedy Central, a subsidiary of Viacom, Inc." ("Comedy Central")) (collectively, "Moving Defendants") hereby submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff Daniel Kassel ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

## I.    PRELIMINARY STATEMENT

Plaintiff's Complaint makes apparent what a comparison of the works at issue will corroborate: Defendants' animated web series bears no similarities whatsoever to protected expression in Plaintiff's work (a four-minute YouTube video).  To begin with, Plaintiff's infringement claim is based on comparisons of creative elements that, in most instances, do not even appear in one or the other of the works at issue.  For example, Plaintiff relies on an alleged "proposed scene" and a social media post that are not included in his final work, and multiple times he references elements that supposedly appeared in a "proof of concept" for Defendants' web series.  But even if every one of the comparisons could be found in both works, those comparisons could not support a copyright infringement claim because they are nothing more than a handful of random, unprotected commonalities scattered within the works and totally devoid of context.  Moreover, because Plaintiff's remaining claims are dependent on his defective copyright infringement claims, they, too, fail as a matter of law.

## II.    SUMMARY OF THE COMPLAINT

According to the Complaint, in 2013 Plaintiff started a YouTube channel called "Jukebox Manatee" to provide links to a cartoon project that he had created featuring a manatee character. [Complaint, ¶ 9.]  Plaintiff alleges that after he became a student at Pratt Institute, he continued to work on this cartoon project, which he eventually finalized and titled *Happily Everglades After* ("*Happily*").  [*Id.* at ¶ 10.]  Plaintiff claims to have presented his ideas and various materials

pertaining to *Happily* to classmates as part of a "customary peer review"; and, in March 2018, he allegedly made his "first official pitch presentation" of *Happily* to an audience at the Pratt Institute theater. [*Id.* at ¶ 12.] Plaintiff then continued to work on and present *Happily* to various audiences, with the final version of his work screened at a 2019 graduation event. [*Id.* at ¶ 15.] Thereafter, Plaintiff claims, he continued "post-production" work on his cartoon; and, in October 2019, he began to submit it for inclusion in film festivals and to promote it publicly. [*Id.* at ¶ 16.] According to Plaintiff, his cartoon "premiered" at the New Jersey International Film Festival in September 2020, following which Plaintiff posted it to his YouTube channel. [*Id.* at ¶ 18.]

Plaintiff alleges that in August 2020, he learned of Defendants' animated web series, called *Loafy*. [*Id.* at ¶ 19.] Plaintiff believes that one of his classmates at Pratt Institute, Joshua Phelps ("Phelps"), was present during Plaintiff's college presentations of *Happily*, and that Phelps was subsequently employed as an animator at Defendant Cartuna and worked on *Loafy*. [*Id.* at ¶¶ 20, 22.] Plaintiff also alleges that another classmate, Katie Glore ("Glore"), attended presentations of *Happily* and that she, too, was subsequently employed by Cartuna. [*Id.* at ¶¶ 21, 23.][1]

Plaintiff alleges four counts: Counts 1 and 2 for copyright infringement[2]; Count 3 for unfair competition under the Lanham Act and Count 4 for "deceptive acts and practices" under New York's General Business Law section 349(a). All of Plaintiff's claims are predicated on Moving Defendants' alleged copyright infringement of *Happily*. [*Id.* at ¶¶ 49-50 and 56-57.]

---

[1] Plaintiff originally named Phelps and Glore as Defendants, but he has voluntarily dismissed both of them from this action. Moving Defendants deny that Phelps and Glore had any involvement whatsoever in the creation or development of *Loafy* and/or that they shared any aspect of Plaintiff's work with Moving Defendants. Nevertheless, Moving Defendants are only moving to dismiss the Complaint based on the lack of substantial similarity.

[2] Other than the fact that Count 1 is stated against all Defendants and Count 2 is stated only against Comedy Central, the two copyright claims appear to be indistinguishable from one another.

300026286

III.     **SUMMARY OF THE WORKS**

Although the works themselves are the best evidence of their contents, a summary of each work is set forth below to provide context for the Motion.

A.       *Happily Everglades After* [3]

*Happily* takes place in the Florida Everglades.  A couple is seen speeding along in a motorboat, shouting with glee, "Life's an adventure!"  Suddenly, the boat hits a bump, as if it just ran over something in the water.  The woman wonders aloud what it was, saying, "It felt . . . sad." The man tells her not to worry about it and to do some yoga.

Back in the wake of the motorboat lies the submerged body of a manatee.  A bird flying overhead begins to cough and sputter, eventually landing on the manatee's scarred back.  The bird retches a variety of inedible objects that it apparently swallowed.  As the manatee slowly rotates to face upward, the bird walks across the manatee's belly and apologizes for its own conduct, explaining that it had a heavy lunch.  The manatee replies, "Aw, no problem sweet beaks, your silky fingers and soggy lunch lotion there added a soothing afternote to your initially prickly feet." The manatee asks the bird, "What brings you out to my belly? Where's your tribe at?"

The bird begins to explain as the scene flashes to a news story about thousands of birds suddenly dropping from the sky in mid-flight.  A large flock of birds is then depicted falling from the sky in a flashback that is reflected in the bird's eyes.  After the flashback ends, the bird asks the manatee, "Anyways, what about you? Where's your family at?"  The manatee explains that some of them "got too close to their friends," as a news headline about boats killing Florida manatees is depicted; and the manatee adds, "the rest got too far away from their friends," as

---

[3] A certified copy of the "deposit copy" of *Happily* that Plaintiff submitted with his application for U.S. copyright registration has been manually filed as Exhibit 1 to the Affidavit of David Halberstadter ("Halberstadter Affidavit").

another headline reporting manatees getting stuck in a "storm drain" appears on-screen. *Happily* appears to be a commentary on humanity's detrimental impact on the Everglades environment.

As the manatee begins to pat his chest or belly and sing, "don't I forget about you" (in an apparent twist on the lyrics of "Don't You (Forget About Me)" by the group Simple Minds), the bird comments that the manatee has it backwards. Suddenly, a boat on the water's surface runs over the manatee's back again. The manatee explains, "Uh, that was just my girlfriend and my buddy," apparently referring to the man and woman from the start of the cartoon. He adds, "she comes around every now and then, it's a passionate fling." Incredulous, the bird responds, "Aw for f—k's sake, mate, I don't think those people are your friends." The manatee comments, "They're just doing their best, just like you and me."

The bird cannot believe it is hearing this and observes that the boat is circling back. The manatee says, "If I bum you out, just let me know, and I'll swim down low, I'll remember you fondly till I find one to take it slow." At which point the manatee begins singing "'cause I'm a Jukebox Manatee," riffing on the song "Jukebox Hero" by the group Foreigner. He "beatboxes" (*i.e.*, he imitates the sounds of a drum machine with his voice) and plays a drum beat on his belly. The cartoon concludes as the bird clutches the manatee in its talons and struggles to lift him above the water as the boat riders pass underneath. The total run time (not including the end credits) is less than four minutes.

### B. *Loafy*

*Loafy* is an adult animated comedy series created by former *Saturday Night Live* cast member Defendant Bobby Moynihan. Comprising a single season of eight episodes, the series features a marijuana-dealing manatee named Loafy who runs a drug empire while living in his water tank at the Center Park Zoo, a run-down zoo adjacent to New York's Central Park Zoo. Loafy's "Manatee Den" is furnished with a couch strapped to floating oil drums and various home

4

appliances (*e.g.,* a television, a refrigerator, a microwave oven, and audio speakers), all of which are floating on separate inflatable rafts.  Several bongs are scattered around his "home."

In the first episode[4], Loafy's son, "Beef," tells Loafy he needs a harp for the talent show at his pre-school the next day.  Loafy agrees, then has second thoughts when his son tells him how expensive it is.  For some reason, Loafy repeatedly mispronounces the instrument as a "horp."  The viewer is then introduced to some of Loafy's marijuana-smoking friends:  "Neck," a giraffe; "Slippy Parker," a chimpanzee; and "Becca," Loafy's human girlfriend.  When Loafy tells Becca about his son's request for a harp, Becca tells Loafy that another zoo denizen, Scrooge, was just talking about a harp.  Loafy speaks with Scrooge (a rare primate called a tarsier), who purchases some marijuana from Loafy.  Loafy asks him about getting a harp; Scrooge agrees to meet up with a friend of his (a human, Eli) who is in an orchestra, and have sex with the friend in exchange for a harp.

The next morning, the giraffe and chimpanzee maneuver the harp into the zoo when Dan, the zookeeper, approaches the Manatee Den and begins making fun of Loafy's name.  Loafy keeps Zookeeper Dan distracted so that he does not see the harp being brought into the zoo.  They trade insults and curses at one another.

In the next scene, Loafy's son is performing on his harp at the school talent show.  He plays beautifully, as Loafy and his animal friends watch remotely on a tablet and Becca sits in the audience, moved to tears.  Loafy congratulates his son, who asks how Loafy was able to get the harp.  Loafy says he will tell him when he is older.  We then see Eli (the orchestra member) in the

---

[4] True and correct copies of all eight episodes of *Loafy* have been manually filed with the Court as Exhibit 2 to the Halberstadter Affidavit. Since Plaintiff does not allege any similarities in plot between *Happily* and *Loafy*, Defendants summarize only the first two episodes to give the Court a sense of the series storyline and characters.

audience, being licked by the primate, Scrooge.  The episode ends with Scrooge appearing to perform oral sex on Eli.

The second episode of *Loafy* begins with Loafy selling marijuana to a penguin named Penelope.  Loafy gets a call on his cellphone informing him that he forgot to pick up his son from school.  Loafy tells Penelope that it is hard being a single dad and a dope dealer; Penelope suggests that Loafy hire a personal assistant.

Loafy begins interviewing various candidates, including an older woman named Gloria (whose name Loafy cannot stand); a camel named "Mar Camel," who insists that he is really the *Star Wars* actor, Mark Hamill; a snake (Loafy is concerned about the fact that she does not have hands or fingers for typing and filing); and a bald eagle named Colonel.  Colonel admits to having committed war crimes in the past, and as he "relives" some of those moments, his eyes fill with images of burning fires.  Loafy interrupts the strange moment by asking Colonel if he is good on eBay; the eagle claims to be excellent on eBay.  When Loafy asks each interviewee whether they would like to smoke marijuana with him right now, they all say yes.  It was a trick question; Loafy feels like he cannot trust any of them.

Loafy turns to Beef, his son, to be his personal assistant.  But Beef fails miserably at every task Loafy gives him, and Loafy fires him.  Beef does not seem to mind.  Loafy ends up reconsidering Gloria, but he still cannot stand her name and rejects her again.

## IV.   PURPORTED SIMILARITIES BETWEEN *HAPPILY* AND *LOAFY*

Plaintiff's purported comparison of the two works is patently baseless, consisting of little more than a handful of random purported commonalities scattered throughout the works.  Worse, the majority of alleged similarities are based on materials *other than the works themselves*.  Set forth below are the *only* alleged similarities:

300026286

- In *Happily*, the manatee character (Jukebox Manatee) has a friend, a small purple and yellow bird. Plaintiff claims that his "original character design"[5] showed the small purple and yellow bird sitting on the manatee's head. In *Loafy*, the manatee character (Loafy) wears a small purple and yellow hat. [*Id*. at ¶ 26.]

- *Happily* opens with Jukebox Manatee getting run over by a boat and shows the scars on his back that the manatee has suffered from such injuries. Plaintiff claims that in Defendants' "proof of concept" for *Loafy*,[6] Loafy purportedly is presented being run over by a boat which leaves him with the same scars. [*Id*. at ¶ 27.]

- According to Plaintiff, in *Happily*, Jukebox Manatee thinks the blonde human girl in the boat that runs over him is his girlfriend. Plaintiff asserts that in Defendants' proof of concept for *Loafy*,[7] Loafy purportedly had a blonde human girlfriend, but her design subsequently was changed. Plaintiff claims that in both *Happily* and *Loafy*, the blonde "girlfriend" purportedly "treated the [manatee] character poorly." [*Id*. at ¶ 28.]

- Plaintiff claims to have "proposed a scene to his classmates that suggested [*Happily*] end with Jukebox Manatee and his bird friend living in their human style apartment in water on a central couch." Plaintiff concedes that this "proposed scene" was not included in Plaintiff's final production of *Happily* – which is the *only* registered work at issue – but he nevertheless alleges that Loafy is shown in Defendants' series "living in a human style apartment in water with a central couch." [*Id*. at ¶ 29.]

---

[5] This alleged comparison improperly relies upon an unregistered "original character design," *not* upon Plaintiff's registered work. [*Id.* at ¶ 26.]

[6] This alleged comparison improperly relies *not* upon the released and distributed version of *Loafy*, but a purported "proof of concept." [Id. at ¶ 27.]

[7] This alleged comparison also improperly relies *not* upon the released and distributed version of *Loafy*, but a purported "proof of concept." [Id. at ¶ 28.]

7

- Plaintiff alleges that he posted an image on Instagram[8] of a character that he called "Barbarian Guinea Pig," and that in one episode of *Loafy*, there appears a character called "Warrior Rat" that purportedly is "similarly designed." [*Id.* at ¶ 30.]

- Jukebox Manatee's bird friend in *Happily* has a flashback reflected in his eyes, and after reliving the trauma, he immediately goes back to normal conversation. Plaintiff alleges that in an episode of *Loafy*, a bird character likewise experiences a flashback reflected in his eyes and then immediately goes back to normal conversation. [*Id.* at ¶ 31.]

- Plaintiff asserts that *Happily* includes a scene in which "a bubble heart floats and then disintegrates," and that in *Loafy*, a heart made of smoke disintegrates in an allegedly identical manner. [*Id.* at ¶ 32.]

- According to Plaintiff, *Happily* "shows the manatee beatboxing songs to himself as he slaps his belly," and that Defendants' Loafy character "also slaps his belly and beatboxes songs." [*Id.* at ¶¶ 33, 34.][9]

- Plaintiff asserts that Loafy's "enemy" in *Loafy* is named Dan, which is also Plaintiff's first name. [*Id.* at ¶ 35.]

## V.    RELEVANT LEGAL STANDARDS

### A.    Legal Standards Governing A Motion To Dismiss

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court clarified the standards for judging the sufficiency of a complaint. To survive a motion to dismiss, a plaintiff must provide more than just "naked

---

[8] This alleged comparison improperly relies *not* upon Plaintiff's registered work, but upon an unregistered Instagram post. [*Id.* at ¶ 30.]

[9] Note that in paragraph 33 of the Complaint, Plaintiff cites to an Exhibit H, but no exhibits were attached to the Complaint. Subsequent paragraphs likewise cite to nonexistent Exhibits I, K, F, E, and G. [*See* Complaint, ¶¶ 34, 38, 39, 41, 42, and 43.]

8

assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678; *Barbash v. STX Fin., LLC*, No. 20-CV-123 (DLC), 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020). Although a plaintiff's allegations are generally taken as true, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Mottola v. Denegre*, No. 12-CV-3465 (LAP), 2012 WL 12883775, at *2 (S.D.N.Y. June 8, 2012) (quoting *Iqbal*, 556 U.S. at 678). "If a plaintiff has 'not nudged [its] claim across the line from conceivable to plausible, [its] complaint must be dismissed.'" *Adams v. Warner Bros. Pictures Network*, No. 05CV5211 (SLT)(LB), 2007 WL 1959022, at *2 (E.D.N.Y. June 29, 2007), *aff'd sub nom. Adams v. Warner Bros. Pictures*, 289 F. App'x 456 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Burch v. Pioneer Credit Recovery*, 551 F.3d 122, 124 (2d Cir. 2008); *Gottlieb Dev., LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 630-31 (S.D.N.Y. 2008).

When ruling on a motion to dismiss, courts may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents . . . of which [the plaintiff] had knowledge and relied on in bringing the suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In effect, a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference; and even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002).

### B.  Legal Standards Governing Copyright Infringement Claims

This Motion turns on a single issue:  the lack of substantial similarity of protected expression between *Happily* and *Loafy*.  The application of well-settled Second Circuit law dictates the dismissal of this action.  By simply reviewing the respective works – which is routinely done

on an upfront motion when infringement is alleged based on two audiovisual works – it is evident that any similarity that exists – if any can be said to exist at all – is entirely superficial.  Plaintiff's list of random and generic similarities – many of which are not even drawn from the works themselves – cannot substitute for the comparison of the actual works, which reveals that the protectable expression in *Happily* and *Loafy* are not close to being "substantially similar."

      1.      <u>On A Motion to Dismiss, The Absence Of Copyright Infringement Can Be Determined Solely Based On The Works Themselves.</u>

"Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying."  *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997); *see also Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).  "There are two main components of [a] *prima facie* case of infringement:  'a plaintiff must first show that his work was actually copied . . . [and] then must show that the copying amounts to an improper or unlawful appropriation.'"  *Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132, 137 (2d Cir. 1998) (*quoting Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992)).

In the absence of direct evidence of copying, a copyright plaintiff must first allege facts to show that defendant had "a reasonable possibility of access" to the preexisting work and that there are similarities in the allegedly infringing work that are probative of copying.  *Jorgensen v. Epic/Sony*, 351 F.3d 46, 54 (2d Cir. 2003); *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).  "'It is only *after* actual copying is established that one claiming infringement' then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to *protected expression* in the earlier work."  *Castle Rock Entm't*, 150 F.3d at 137 (*quoting Repp*, 132 F.3d at 889) (emphasis added).

300026286

Even assuming solely for purposes of this Motion that Plaintiff's allegations of Moving Defendants' purported access to *Happily* are sufficient,[10] and even if there were enough commonalities between *Happily* and *Loafy* to be probative of copying (which there are not), Plaintiff's copyright claims fail because any review of the works themselves evidences that they are not substantially similar in their protected expression.

The Second Circuit has held that in cases of copyright infringement, "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *see also Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). "Courts in this district have dismissed meritless copyright infringement claims at the pleading stage where no substantial similarity was found." *Adams*, 2007 WL 1959022 at *5 (citing *Buckman v. Citicorp*, No. CV-95-0773, 1996 WL 34158, at *3 (S.D.N.Y. Jan. 30, 1996), *aff'd*, 101 F.3d 1393 (2d Cir. 1996)); *see also Shipman v. R.K.O. Radio Pictures*, 100 F.2d 533, 538 (2d Cir. 1938) (affirming dismissal of the complaint "on motion without taking testimony but upon a reading of the play and viewing an exhibition of the motion picture"); *Gottlieb*, 590 F. Supp. 2d at 629; *Bell v. Blaze Magazine*, No. CV-99-12342, 2001 WL 262718, at *4 (S.D.N.Y. Mar. 16, 2001); *Boyle v. Stephens, Inc.*, No. CV-97-1351, 1998 WL 80175 at *6 (S.D.N.Y. Feb. 25, 1998). With respect to copyright infringement claims, courts are permitted to review and compare the allegedly infringed and the allegedly infringing works because they, too, are "integral" to the complaint. *See, e.g., McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) ("[W]hen a defendant raises the question of substantial similarity at the pleadings stage on a motion to dismiss, . . . a district court

---

[10] Moving Defendants dispute that they ever obtained legally cognizable access to Plaintiff's work, whether through Defendants Phelps and/or Glore or otherwise. But Moving Defendants are not by this Motion challenging the legal sufficiency of Plaintiff's access allegations.

11

may consider 'the facts as asserted within the four corners of the complaint' together with 'the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'"); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (same); *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (For purposes of considering a motion to dismiss pursuant to 12(b)(6), a court may "consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.")

Discovery is unnecessary, as the only facts relevant to substantial similarity are the works themselves. *Peter*, 602 F.2d at 64 (no discovery necessary because "what is required is only a . . . comparison of the works"). Further, the "works themselves supersede and control contrary descriptions of them." *Boyle*, 1998 WL 80175 at *4 (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)); *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("[I]f the allegations of the complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint[.]").

2.  This Court Should Apply The "Discerning Ordinary Observer" Test Because The Purported Similarities Between The Works Consist Almost Entirely Of Unprotectable Elements.

In determining whether two works are substantially similar, courts in this Circuit typically apply the "ordinary observer test," asking "whether a lay observer would consider the works as a whole substantially similar to one another." *Williams*, 84 F.3d at 590. However, where, as here, the works in question contain both protectible and unprotectible elements, the court must apply a "discerning ordinary observer test," which inquires "only whether 'the protectible elements, standing alone, are substantially similar.'" *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 309

(S.D.N.Y. 1999) ); *Williams*, 84 F.3d at 588 (quoting *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).  As discussed in the following sections, the purported similarities between *Happily* and *Loafy* consist almost entirely of unprotectable elements including, but not limited to, (i) colors, (ii) hair color, (iii) first names, and (iv) mere ideas.

3.    <u>Copyright Law Does Not Protect Generalized Themes or Ideas or Stock Elements.</u>

It is a fundamental principle that any claim of substantial similarity must be based on "more than mere generalized idea[s] or themes."  *Walker*, 784 F.2d at 48-49; *Alexander v. Murdoch*, 502 F. App'x 107, 109 (2d Cir. 2012) (no substantial similarity existed between plaintiff's pilot script and the television show *Modern Family*); *Hudson v. Universal Studios, Inc.*, No. 04 CV 6997(GEL), 2008 WL 4701488, at *4 (S.D.N.Y. Oct. 23, 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010) (similarities in theme "exist[ed] only at the most general level" in that both works were "set in prisons and deal with the issue of wrongful incarceration.").

Instead, courts look to "the total concept and feel, theme, characters, plot, sequence, pace, and setting."  *Williams*, 84 F.3d at 588; *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, at 292 (S.D.N.Y 2012).  "[S]pecific overlapping character traits" or plot points that are superficial or *de minimis* are not sufficient to demonstrate substantial similarity.  *Alexander*, 502 F. App'x at 109. The Second Circuit has noted that "'numerous differences tend to undercut substantial similarity.'" *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 241 (2d Cir. 1983); *Adsani v. Miller*, No. 94 CV 9131, 1996 WL 194326, at *3 (S.D.N.Y. Apr. 22, 1996); *see also Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other.").

300026286

Moreover, the use of elements that constitute s*cènes à faire* or generic stock scenes cannot constitute copyright infringement because they "necessarily result from the choice of a setting or situation." *Walker*, 784 F.2d at 50 (finding that "[e]lements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about . . . policemen in the South Bronx," and thus are unprotectable s*cènes à faire*); *Williams*, 84 F.3d at 588-89 (although the two works "share[d] a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers, these settings [were] classic s*cènes à faire* that flow[ed] from the uncopyrightable concept of a dinosaur zoo"); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980) ("incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic" are unprotectable elements); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 92 (2d Cir. 1976) ("where a lost child is the protagonist, there is likely to be a reunion with parents"); *Berkic v. Crichton*, 761 F.2d 1289, 1294 (9th Cir. 1985) ("[S]mall miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other" are unprotectable elements as they are "familiar scenes and themes … of modern American literature and film.").

Finally, mere lists of purported random "similarities" isolated from the context in which they appear, like the ones that Plaintiff has alleged in paragraphs 26 through 35 of the Complaint, are "inherently subjective and unreliable," particularly where "the list emphasizes random similarities scattered throughout the works." *Williams*, 84 F.3d at 590; *see also Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 663 (S.D.N.Y. 2011) (granting motion to dismiss and holding that "random similarities scattered throughout the works . . . cannot by themselves support a finding of substantial similarity"); *Starobin v. King*, 137 F. Supp. 2d 93 (N.D.N.Y. 2001) (dismissal of

14

copyright lawsuit regarding Stephen King's book, *Desperation*, based on a 16-page list of non-contextual incidental similarities).

## VI.   PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE CLAIM OF COPYRIGHT INFRINGEMENT AS A MATTER OF LAW BECAUSE THE WORKS ARE COMPLETELY DISSIMILAR.

### A.   Plaintiff's Alleged "Similarities," Most Of Which Are Not Even Based On The Works Themselves, Cannot Support A Copyright Infringement Claim.

The Complaint makes clear that Plaintiff's copyright infringement claims are entirely dependent upon a list of ten random, haphazard, and mostly false comparisons.  Six of the ten comparisons do not even compare *Happily* to *Loafy*, but instead rely upon either unregistered material created by Plaintiff or alleged preliminary material relating to Moving Defendants' series that was not part of the final version.  And the remaining four comparisons (which are at least based on the two works at issue) are entirely superficial and cannot come close to supporting a copyright infringement claim.

#### 1.   The Six Comparisons That Are *Not* Based On Both *Happily* and *Loafy* Cannot Support A Copyright Infringement Claim.

First, Plaintiff alleges that in *Happily*, Jukebox has a friend who is a small purple and yellow bird.  Plaintiff claims that his "original character design" showed the small purple and yellow bird sitting on the manatee's head, while in *Loafy*, Loafy wears a small purple and yellow hat.  [Complaint at ¶ 26.]  To begin with, Plaintiff's "original character design" is not part of his registered work, and it is therefore completely irrelevant to his infringement claims.  Plaintiff concedes, as he must, that the bird does not sit on Jukebox's head in the registered version of *Happily*.  But just as importantly, (i) a bird is not the same as a hat, (ii) colors generally are not protected by copyright (*see* 37 C.F.R. § 202.1(a)), and (iii) the Second Circuit has declined to

single out color as an individual element when conducting a copyright infringement analysis. *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998).

Second, *Happily* opens with Jukebox getting run over by a boat and shows the scars on his back that the manatee has suffered from this injury. Plaintiff claims that in Defendants' "proof of concept" for *Loafy*, Loafy purportedly is presented being run over by a boat which leaves him with the same scars. [*Id.* at ¶ 27.] Whether or not this is true, Defendants' "proof of concept" for *Loafy* is not the allegedly infringing work; only the final version of the series is relevant to Plaintiff's infringement claims.

Third, in *Happily*, Jukebox thinks the blonde human girl in the boat is his girlfriend. Plaintiff asserts that in Defendants' proof of concept for *Loafy*, Loafy purportedly had a blonde human girlfriend, but her design subsequently was changed. [*Id.* at ¶ 28.] Once again, Defendants' proof of concept does not constitute the allegedly infringing work, and it is therefore irrelevant to the infringement analysis. In the final version of *Loafy*, Becca is a redhead. And once again, even if Becca were a blonde, it would be irrelevant because color – even hair color – is not protected by copyright.[11]

Fourth, Plaintiff claims to have "proposed a scene to his classmates that suggested [*Happily*] end with Jukebox Manatee and his bird friend living in their human style apartment in water on a central couch." He compares this "proposed scene" to the fact that Loafy lives in a tank in a zoo that is appointed with human furnishings, including a couch. [*Id.* at ¶ 29.] Again, this "proposed scene" by Plaintiff's own admission is not part of his registered work and is therefore irrelevant to any infringement analysis. But even if it were relevant, living like a human would

---

[11] Plaintiff also alleges that in both *Happily* and *Loafy*, the blonde "girlfriend" purportedly "treated the [manatee] character poorly." [Id. at ¶ 28.] But the girl in the speedboat does not "treat" Jukebox in any manner at all; and her boyfriend, who is driving the boat, unintentionally runs over Jukebox. By contrast, Loafy and Becca, who are in an actual relationship, experience typical human relationship issues.

constitute *scènes à faire* or a generic stock element for a story featuring an anthropomorphic animal.

Fifth, Plaintiff alleges that in one episode of *Loafy* there appears a character (called "Warrior Rat") that supposedly is "similarly designed" to the image of a character Plaintiff once posted on Instagram. [*Id.* at ¶ 30.] But this alleged character is not part of Plaintiff's registered work and is therefore irrelevant.

Sixth, and perhaps most absurdly, Plaintiff asserts that Loafy's "enemy" in *Loafy* is named Dan and that Dan (Daniel, actually) is also Plaintiff's first name. [*Id.* at ¶ 35.] But neither Plaintiff nor his first name are part of the registered *Happily* work, so the name similarity is irrelevant; and common names are not protected by copyright in any event. U.S. Copyright Office Circular No. 33 ("Works Not Protected by Copyright"); *Sinicola v. Warner Bros., Inc.*, 948 F. Supp. 1176, 1188 (E.D.N.Y. 1996) (Plaintiff cannot prevent others from identifying Italian gangsters by common first names such as "Frank," "Frankie," "Joey," "Paulie," and "Vinnie.").

> 2.   The Four Comparisons That *Are* Based On Both *Happily* and *Loafy* Cannot Support A Copyright Infringement Claim.

Plaintiff asserts only four comparisons that are actually based on the works at issue, and they fall far short of establishing substantial similarity.

First, in *Happily*, *a* flashback to the death of his flock is reflected in the eyes of Jukebox's bird friend, following which the bird changes the topic and asks about Jukebox's family. In *Loafy*, Loafy interviews a variety of applicants to be his personal assistant, including an eagle named Colonel who is a U.S. war veteran. When Loafy asks Colonel if he ever committed war crimes, the eagle says that every night he flashes back to having served honorably, while burning fires are seen in his eyes. Loafy then gets the interview back on track with a follow-up question about the character's proficiency on eBay. But other than the unprotected idea of a flashback being reflected

in a character's eyes (a common cinematic trope referred to as "eye recall"),[12] the *expression* of

that idea – for example, what triggered the flashback, the substance of the flashback and the visual

imagery depicting it – are all completely different.

Second, Plaintiff points to a scene in *Loafy* in which "a heart made of smoke" disintegrates

in an allegedly identical manner to a scene in *Happily* in which "a bubble heart floats and then

disintegrates."  [*Id.* at ¶ 32] This comparison is completely decontextualized to make the scenes

appear to be similar when, in fact, they are not.  In *Happily*, a heart on fire is intended as a visual

reference to the bird character experiencing heartburn after eating a heavy lunch of inedible human

detritus.  In *Loafy*, the manatee character exhales a gust of marijuana smoke in the shape of a

broken heart after he is led to believe that his human girlfriend, Becca, might be cheating on him.

Third and fourth, Plaintiff alleges that both his manatee character and the manatee character

in *Loafy* "slaps his belly while speaking," and that both slap their bellies and "beatbox" songs.  [*Id.*

at ¶¶ 33, 34.]  But Loafy does not generally slap his belly while talking.  He engages in various

gestures with his short arms, but "belly-slapping" is not one of them.  In only one episode (Episode

7), in which Loafy decides he is going on a diet, Loafy slaps his belly as he says he needs to lose

weight.

Moreover,  Loafy  does  not  "beatbox"  songs.   The  same  episode  is  accompanied  by  *a*

*cappella* voices making whistling and "beatboxing" sounds in lieu of instrumental music, but

Loafy  does  not  beatbox  himself,  much  less  beatbox  while  slapping  his  belly.   But  more

importantly, even if Jukebox and Loafy both patted their bellies and beatboxed in the same manner

in  similar  contexts  (which  they  do  not  do),  this  superficial  commonality  would  be  grossly

insufficient by itself to support a claim of copyright infringement.

---

[12] *See, e.g.*, https://tvtropes.org/pmwiki/pmwiki.php/Main/EyeRecall.

18

It is apparent, both from a comparison of the works and from even a superficial analysis of Plaintiff's list of alleged similarities, that *Happily* and *Loafy* have nothing whatsoever in common aside from a manatee character who has some human characteristics. Therefore, Plaintiff's copyright claims fail as a matter of law.

**B.**     **There Is No Substantial Similarity Between The Works' Respective Plots, Characters, Themes, Sequence, Pace, Setting, Or Total Concept And Feel.**

As discussed above, Plaintiff's infringement claims are based on only ten purported commonalities. His claims *are not* based on purportedly substantial similarities in the works' plots, characters, settings, themes, and total concept and feel. This is because *Happily* and *Loafy* are not even remotely similar in respect of these critical characteristics.

1.     The Plot Of *Loafy* Is Substantially Dissimilar To *Happily.*

Plaintiff does not appear to allege in the Complaint that the plots of *Loafy* and *Happily* are substantially similar. No doubt this is because *Happily* does not have an extensive or distinct storyline, and it is entirely different from the plot of *Loafy*. To the extent that any plot is discernable in *Happily*, it appears to have something to do with the effects of humans on the Everglades environment. Jukebox Manatee, the main character, appears to be eternally optimistic and positive, despite being repeatedly run over and scarred by a couple in a speedboat. His new bird friend, who finds himself feeding on inedible human detritus only to regurgitate it later, is more realistic, pointing out to the manatee that the humans in the boat are not his friends and that they are repeatedly causing Jukebox physical injuries.

By contrast, *Loafy* has nothing whatever to do with humanity's impact on its environment in general or the Everglades in particular. The story involves a group of marijuana-smoking animals who reside in a downtrodden zoo in New York City where Loafy, the manatee, is the largest seller of marijuana in the city. All the zoo denizens appear to smoke marijuana purchased

from Loafy; and these characters interact with human characters as though doing so is normal.  In brief, the eight episodes of the series center around:  (i) Loafy dealing marijuana and attempting to obtain a harp for his son to play at his pre-school talent show; (ii) Loafy interviewing candidates to become his personal assistant; (iii) Loafy and his animal friends taking over the zoo's Instagram account; (iv) Loafy getting drawn into the world of fantasy role-playing games; (v) Loafy and friends falling under the spell of a hypnotist; (vi) Loafy becoming convinced that his human girlfriend, Becca, is sleeping with Zookeeper Dan; (vii) Loafy going on a diet; and (viii) Loafy putting his chimpanzee friend, Slippy, in charge of the zoo's "neighborhood watch" after a late-night incident.

In case after case, courts in this Circuit have dismissed copyright claims where there was far more overlap in plot elements than alleged here.  *See Mallery v. NBC Universal, Inc.*, No. 07 CV 225, 2007 WL 4258196, at *6 (S.D.N.Y. Dec. 3, 2007), *aff'd* 331 F. App'x 821 (2d Cir. 2007) (no substantial similarity where works shared the ideas of "(1) painting a future in which tragic and destructive events take place, such as the destruction of landmark buildings in New York City; (2) having a prediction confirmed by a newspaper report; and (3) making an attempt to prevent a tragic event in light of the future"); *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010) (no substantial similarity between the short story "Rear Window" and the movie "Disturbia" where "both works [told] the story of a male protagonist, confined to his home, who spies on neighbors to stave off boredom, . . . discovers that one of his neighbors is a murderer, . . . is himself discovered by the suspected murderer, is attacked by the murderer, and is ultimately vindicated"); *Rehyer*, 533 F.2d at 89, 92 (no substantial similarity despite an "identical sequence of events" with both works describing a lost child who has difficulty finding his mother because his description of her as the most beautiful woman in the world does not, at least to strangers, comport with the "homely woman" with whom he is ultimately reunited); *Allen*, 739 F.

Supp. 2d 642 (dismissal of copyright claim alleging that *Harry Potter* and plaintiff's work shared the ideas of a young male protagonist, secret wizarding communities and wizard competitions).

In summary, the plots of the respective works are nothing alike, and Plaintiff apparently concedes this.

2.     <u>The Characters In *Loafy* And *Happily* Are Substantially Dissimilar.</u>

Plaintiff also does not appear to claim that the characters of *Loafy* are substantially similar to characters in *Happily*, other than the fact that each work includes a manatee character, a bird character, and a human female character.  In fact, any similarity between the principal characters of *Happily* and *Loafy* begin and end with the fact that some of them are anthropomorphic animals.

"The bar for substantial similarity in a character is set quite high."  *Sheldon*, 748 F. Supp. 2d at 208.  "In determining whether characters are similar, a court looks at the 'totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work]."  *Hogan*, 48 F. Supp. 2d at 309–10 (citing *Walker II*, 784 F.2d at 50) (internal quotations omitted).

Characters that are "essentially undeveloped stereotypes" or "constitute a general prototype" are not protectable.  *Hudson*, 2008 WL 4701488, at *6 (no copyright ownership in "idea of a horny, sex-seeking, over-the-top, gay character," "tough prison guard" or "young, incarcerated African-American male"); *Allen*, 739 F. Supp. 2d at 659-60 ("famous male wizards, initiated late into wizarding (in pre/early adolescence), who receive formal education in wizarding and are chosen to compete in year-long wizard competitions" were general prototypes); *Sheldon*, 748 F. Supp. 2d at 208 (although both works involved a "male protagonist, confined to his home, who spies on neighbors to stave off boredom and, in so doing, discovers that one of his neighbors is a murderer," that alone did not demonstrate substantial similarity); *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1261 (S.D.N.Y. 1995) (even though protagonists of the two

21

disputed works were both self-centered bachelors in their mid-thirties who pursued love interests and became trapped in a repeating day, these similarities "exist[ed] only at a level of abstractions too basic to permit any inference that defendants wrongfully appropriated any 'expression' of plaintiff's ideas"); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 312 (S.D.N.Y. 1999) (even though protagonists in both works had the same name, both were half-human and half-vampire, appeared to be in their early twenties and shared other "characteristics common to a great many 'Generation X' post-adolescents," these were all unprotectable elements).

None of the characters in *Loafy* is even remotely similar to characters in *Happily*. Most critically, Loafy himself is nothing like Jukebox. Loafy is a crude, marijuana-smoking, single father and drug dealer who lives in a water tank in a dilapidated zoo in New York City. His "Manatee Den" is appointed with typical human comforts, all floating on the water of his tank. Jukebox, by contrast, is an easygoing manatee who lives happily in the waterways of the Florida Everglades, and he has no children or any identifiable occupation. Loafy gets high with all his animal and human friends and has an actual romantic relationship with a human girlfriend. Jukebox repeatedly gets run over by a couple in a speedboat but fantasizes that he has some kind of relationship with the woman and the man, who clearly do not even know that Jukebox exists.

The two human characters in *Happily* are not fleshed out at all. They speak with the inflexion of "surfer dudes" and do nothing but ride around in their speedboat, frequently running over Jukebox. By contrast, Becca is Loafy's actual girlfriend, and they interact as though a romantic relationship between a manatee and a human is perfectly normal. Another human, Eli, apparently is another animal's ex. Zookeeper Dan is a nasty, angry man who has no analog in *Happily*. Jukebox's new bird friend in *Happily* (whom Jukebox refers to as "Sweet Beaks") speaks with a Cockney accent. He apparently lost his flock in a bizarre accident in which they all died in mid-flight. While the eagle, Colonel, is certainly a bird, he is not otherwise comparable to the bird

in *Happily* in appearance, personality, or actions.  In summary, none of the characters in *Loafy* are similar to the protected expression of any characters in *Happily*.

        3.     <u>The Settings, Themes, And "Total Concept And Feel" Of The Works Are Substantially Dissimilar.</u>

Plaintiff does not allege in the Complaint that the setting of *Loafy* is substantially similar to that of *Happily*, for good reason:  *Loafy* is set in a run-down New York City zoo, while *Happily* is set in the Florida Everglades.  Plaintiff also does not allege in the Complaint that *Loafy*'s theme is similar to that of *Happily*, nor could he:  *Happily* appears to be a commentary on humanity's environmental impact; *Loafy* is a farcical story about a marijuana-dealing manatee who lives in a run-down New York City zoo and has a variety of adventures and interactions with his collection of animal friends, human acquaintances and his young manatee son.

Finally, Plaintiff does not allege in the Complaint that that the works' "total concept and feel" are substantially similar.  The "total concept and feel" of a work refers to the way the author selected, coordinated and arranged the elements of the work, taking into consideration similarities in "mood, details or characterization."  *Reyher*, 533 F.2d at 91-92.  In comparing the total concept and feel of the works, courts consider the works as a whole.  *See Jones v. CBS, Inc.*, 733 F. Supp. 748 at 754 (S.D.N.Y 1990).

The total concept and feel of *Loafy* is completely different from that of *Happily*.  The elements of *Happily* have been arranged in such a way as to convey the beauty of the Everglades and its inhabitants as it repeatedly is disrupted and damaged by humans.  The overall concept and feel of *Loafy* is that of a gritty, urban zoo with streetwise inhabitants engaged in typically human behaviors, especially drug use.  For all of these reasons, Plaintiff's copyright infringement claims fail as a matter of law, and should be dismissed with prejudice.

300026286

## VII.   PLAINTIFF'S REMAINING CLAIMS FAIL, AS WELL.

Plaintiff does not allege any separate wrongful conduct giving rise to his federal unfair competition claim or his state law "deceptive acts and practices" claim.  To the contrary, both claims are expressly predicated on the alleged copyright infringement of *Happily*.  [Complaint at ¶¶ 49-50 and 56-57.]

Plaintiff's Lanham Act claim is barred by the United States Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  The court made clear in *Dastar* that the Lanham Act's proscriptions against false designations of origin and unfair competition apply only to "tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  *Id.* at 37.  And because Plaintiff's state law claim alleges no "additional element" beyond purported infringement, it is preempted by the Copyright Act.  17 U.S.C. § 301(a); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).

Even if Plaintiff's Lanham Act claim were not barred by *Dastar* and his state law claim were not preempted by the Copyright Act, both claims still fail as a matter of law.  Counts 3 and 4 are based exclusively on Plaintiff's copyright claims (Counts 1 and 2); so, if Plaintiff's copyright claims fail as a matter of law, Plaintiff's remaining claims must be dismissed, as well.

## VIII.   CONCLUSION

Because *Loafy* is not substantially similar to protected expression in *Happily*, all of Plaintiff's claims fail as a matter of law and should be dismissed with prejudice and without leave to amend.

300026286

Dated:   January 5, 2024

By:   */s/ David Halberstadter*
David Halberstadter (*Admitted pro hac vice*)          Mark T. Ciani
Amelia E. Bruckner (*Admitted pro hac vice*)          Katten Muchin Rosenman LLP
Katten Muchin Rosenman LLP                            50 Rockefeller Plaza
2029 Century Park East, Suite 2600                    New York, New York 10020-1605
Los Angeles, California 90067                          Telephone:  212.940.6509
Telephone:  310.788.4400                              Facsimile:  212.940.8774
Facsimile:  310.788.4471                              Email:  mark.ciani@katten.com
Email:  david.halberstadter@katten.com
Email:  amelia.bruckner@katten.com                    *Attorneys for Moving Defendants*