UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X          Civil Action No.: 23-cv-06958-JLR

DANIEL KASSEL,

                 Plaintiff,

    -against-

ROBERT MOYNIHAN, JR., CARTUNA, L.L.P.,

and COMEDY CENTRAL, a subsidiary of

VIACOM, INC.,

                 Defendants

--------------------------------------------------------X


**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**


ADWAR IVKO, L.L.C.
Attorneys for Plaintiff
Armando Llorens (AL 1757)

225 West 34th Street
Floor 9
New York, New York 10122
(212) 725 - 1818
armando@adwarivko.com

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** ...................................................................................................1

**ALLLEGATIONS RELATED TO ALL CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . **2**

**COMPARISON OF WORKS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**3**

**ARGUMENT** ................................................................................ . . . **.4**

    I.   Standard for Determination of Substantial Similarity . . . . . . . . . . . . . . . . . .**4**

    II.   A Lay Observer Would Consider The Infringing Work As Substantially Similar To The Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .. . .. .. . .**5**

    III.   There Is Substantial Similarity Between The Work And The Infringing Work Evidenced By The Elements And Aesthetic Decisions In the Respective Works . . . . . **8**

    IV.   Alternatively The Copyright Claim Survives Under The Fragmented Literal Similarity Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    V.   The Plaintiff Shall Seek Leave to Replead His Lanham Act and State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .**13**

**CONCLUSION** ...........................................................................................13

# TABLE OF AUTHORITIES

## Cases

### Federal

*Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642 (S.D.N.Y. 2011)………………………………*10*

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)…………………………………………………………………………………8

*Hallford v. Fox Entm't Grp.*, No. 12 Civ. 1806, 2013 WL 541370, at *5 (S.D.N.Y. Feb. 13, 2013), aff'd, 556 Fed.Appx. 48 (2d Cir. 2014)………………………………………………5

*Hogan v. DC Comics,* 48 F.Supp.2d 298 (S.D.N.Y. 1999)………………………………5, 6

*Horizon Comics v. Marvel Ent.*, LLC, 246 F. Supp. 3d 937, 941 (S.D.N.Y. 2017)……………6,7

*Hudson v Universal Studios*, 2008 WL 4701488 No. 04 CV 6997(GEL), (S.D.N.Y. Oct. 23, 2008), aff'd, 369 F. App'x 291 (2d Cir. 2010)………………………………………………10

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1004 (2d Cir.1995)……………………..8

*May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 178 (S.D.N.Y. 2019.)………………………11-12

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010.)…………5

*Sheldon Abend Revocable Trust v. Spielberg,*
*748 F. Supp. 2d 200 (S.D.N.Y. 2010*………………………………………………………*10*

*Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996)………………………………………...5

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001)………………………………4

## Statutes

17 U.S.C. § 301(a)..................................................................................................1, 13

Lanham Act,15U.S.C.§ 1051 et seq……………………………………………………1,13

## Rules

Fed. R. Civ P 8.. ……………………………………………………………………………7

Fed. R. Civ P 12 …………………………………………………………………………1.

Fed. R. Civ P. 15……………………………………………………………………….13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X          Civil Action No.: 23-cv-06958-JLR
DANIEL KASSEL,

                               Plaintiff,

      -against-

ROBERT MOYNIHAN, JR., CARTUNA, L.L.P.,
and COMEDY CENTRAL, a subsidiary of
VIACOM, INC.,

                               Defendants
--------------------------------------------------------X

### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiff, by its undersigned attorneys, hereby submit this Memorandum of Law in opposition to Defendants' Motion to Dismiss the Complaint (ECF 21):

### <u>INTRODUCTION</u>

The present action is a civil action for (a) copyright infringement arising under the Copyright Laws of the United States, the Act of October 19, 1976, 17 U.S.C. §§ 101, et seq.; (b) unfair competition arising under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 et seq., and specifically under U.S.C. §1121 and §1125(a), and (c) deceptive acts and practices arising under the General Business Laws of the State of New York, N.Y. Gen. Bus. Law § 349(a).

Defendants have moved for dismissal of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6),  on the sole grounds that the Work and the Infringing Work are not substantially similar. For the reasons stated herein, Defendants' motion should be denied.

## <u>ALLLEGATIONS RELATED TO ALL CLAIMS</u>

Plaintiff has had a lifelong adoration of manatees. In 2013, Plaintiff started the YouTube channel "Jukebox Manatee" to provide links to a cartoon project he had created starring the manatee character "Jukebox Manatee." See Exhibit ("Exh.") 1 to the Affidavit of David Halberstadter submitted with Defendants' Motion to Dismiss. ECF. 22.    In 2018, as a student at Pratt Institute, Plaintiff continued his work on the "Jukebox Manatee" idea and began to complete a fully devised pitch for his final product, "Happily Everglades After" (hereinafter referred to as the "WORK").

In February 2018, Plaintiff presented the idea, animatic, storyboards, and character designs of the WORK to a classroom of students at Pratt Institute for the course's customary peer review. On or about March 26, 2018, Plaintiff presented his first official pitch presentation in the Pratt Institute theater at Myrtle Hall to invited guests in attendance, including agents and industry professionals. Plaintiff continued post production work on his film until October 2019, and then began to submit the WORK for inclusion in film festivals and promote the WORK publicly Plaintiff promoted his WORK for Halloween 2019, and drew his manatee character in makeup resembling Joker from the Batman franchise, posting it online to Instagram After the WORK premiered at the New Jersey International Film Festival ("NJIFF") in September 2020, Plaintiff posted the WORK to his YouTube channel.

Defendants' work is an adult animated comedy series featuring a marijuana-dealing manatee named Loafy who runs a drug empire while living in his water tank at the Center Park Zoo, a run-down zoo adjacent to New York's Central Park Zoo. Hereinafter the "Infringing Work.")

## COMPARISON OF WORKS

A comparison of Plaintiff's WORK and Defendants' INFRINGING WORK shows numerous examples and descriptions of substantial similarity. Moreover, the totalities of the Work and the INFRINGING WORK show substantially similar elements, themes and presentation.

Plaintiff presented an original depiction of a protagonist with certain key features: (1) a manatee, (2) a laid-back attitude, (3) a human girlfriend, (4) suffering misfortunes as a commentary on life and its travails with irony and black humor. Defendants produced a protagonist who is (1) a manatee, (2) with a laid-back attitude, (3) has a human girlfriend, and (4) suffers misfortunes as a commentary on life and its travails with irony and dark humor.

Plaintiff's work reflect "an original way [of] select[ing], coordinat[ing], and arrang[ing] the elements of his work." Defendants created an Infringing Work that has substantial similarities to the original choices made by the Plaintiff in creating the Work.

In addition, there are many specific similarities. In Plaintiff's WORK, the manatee character has a friend, a small purple and yellow bird. Plaintiff's original character design showed the manatee with the small purple and yellow bird sitting on his head. Defendants' show's manatee character has a small purple and yellow hat. Plaintiff's WORK opens with the manatee character being run over by a boat and shows the scars on his back the manatee has suffered from this injury. In the proof of Defendants' concept for the INFRINGING WORK, the manatee is presented being run over by a boat, which leaves him with the same scars.

In Plaintiff's WORK, the manatee character thinks the blonde human girl in the boat is his girlfriend. In Defendants' INFRINGING WORK, their manatee has a blonde human girlfriend.

In Plaintiff's WORK, the manatee's bird friend has a PTSD flashback reflected in his eyes, and after reliving the trauma, he immediately goes back to normal conversation. In an episode of Defendants' INFRINGING WORK, there is a bird character experiencing a PTSD flashback reflected in his eyes and then immediately goes back to normal conversation.

Plaintiff's WORK presents a scene with the manatee and bird where a bubble heart floats and then disintegrates. Defendants' INFRINGING WORK presents a heart made of smoke and disintegrating in an identical manner.

Plaintiff's manatee in his WORK slaps his belly while speaking, as does Defendants' manatee character "Loafy" in the INFRINGING WORK.

Plaintiff's WORK shows the manatee beatboxing songs to himself as he slaps his belly. Defendants' manatee character "Loafy" also slaps his belly and beatboxes songs. The soundtrack for the INFRINGING WORK is all beatboxing and natural noises without instruments.

## ARGUMENT

Defendants have moved on the sole ground of lack of sufficient substantial similarity between the Work and the Infringing Work and thus Plaintiff will only address that argument without conceding any other factual or legal points argued by Defendants.  See Defendants' Memorandum of Law in Support of their Motion to Dismiss, p. 2, fn. 1.

I.     Standard for Determination of Substantial Similarity

The test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001). The Second Circuit has disavowed the notion that courts:

are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Id.* at 1003; *see Boisson,* 273 F.3d at 272–73. Instead, we are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 133 (2d Cir.2003); *see Boisson,* 273 F.3d at 272; *Knitwaves Inc.,* 71 F.3d at 1003, as instructed by our "good eyes and common sense," *Hamil Am.,* 193 F.3d at 102 (alteration omitted). This is so because "the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of [unprotectible components] ...—are considered in relation to one another." Tufenkian Import/Export Ventures, Inc., 338 F.3d at 134. Thus, in the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Knitwaves Inc., 71 F.3d at 1004 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991))

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010.) Here it is apparent that Defendants have misappropriated the original way in which the Plaintiff selected, coordinated and arranged the elements of his work.

## II.  A Lay Observer Would Consider The Infringing Work As Substantially Similar To The Work

Viewed under the proper legal standard it is apparent that "a lay observer would consider the works as a whole substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996); accord *Hallford v. Fox Entm't Grp.*, No. 12 Civ. 1806, 2013 WL 541370, at *5 (S.D.N.Y. Feb. 13, 2013), aff'd, 556 Fed.Appx. 48 (2d Cir. 2014) (summary order). Defendants propose the Court selectively compare the Work and the Infringing Work to determine only if specific protectable elements were infringed instead of evaluating the works as a whole. See Defendants' Memoranda of Law, p. 12. The Defendants cite a district court case, *Hogan v. DC Comics,* 48 F.Supp.2d 298 (S.D.N.Y. 1999) for the proposition that ""discerning ordinary observer test," inquires "only whether 'the protectible elements, standing alone, are substantially similar.'"

*Id.* First, it is worth noting that *Hogan* was decided on a motion for summary judgment. But more importantly, a fuller quotation from *Hogan* articulates that Defendants' proposed approach is not the law in the Second Circuit. *Hogan* stated:

> Even in applying the ordinary observer or discerning ordinary observer test, however, a court must examine the "total concept and feel" of the work. *Knitwaves, 71 F.3d at 1003.* Moreover, even a compilation of unprotectable elements may enjoy copyright protection when those elements are arranged in an original manner. *See id.* at 1003–04 (quoting *Feist, 499 U.S. at 362, 111 S.Ct. 1282); *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 964 (2d Cir.1997).* In determining whether characters are similar, a court looks at the " 'totality of [the characters'] attributes and traits' as well as the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work]." *Walker, 784 F.2d at 50* (quoting *Warner Bros. v. American Broadcasting Cos., 720 F.2d 231, 241 (2d Cir.1983)* (*"Warner II"* )). The Second Circuit has provided the following guidance in the analysis of whether one character infringes another:
>
> [w]hat the character thinks, feels, says and does and the descriptions conveyed by the author through the comments of other characters in the work episodically fill out a viewer's understanding of the character. At the same time, the visual perception of the character tends to create a dominant impression against which the similarity of a defendant's character may be readily compared, and significant differences readily noted. Ultimately, care must be taken to draw the elusive distinction between a substantially similar character that infringes a copyrighted character despite slight differences in appearance, behavior, or traits, and a somewhat similar though non-infringing character whose appearance, behavior, or traits, and especially their combination, significantly differ from those of a copyrighted character, even though the second character is reminiscent of the first one. *Warner II, 720 F.2d at 241–42.*

Hogan, 48 F.Supp.2d at 302 .

The decision by this court in *Horizon Comics v. Marvel Ent.*, LLC, 246 F. Supp. 3d 937, 941 (S.D.N.Y. 2017) illustrates the misperception by Defendants of the standard applied in discerning substantial similarity:

> Yet even when engaging in the "discerning" substantial similarity inquiry, courts "**have disavowed any notion that we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.**" Id. at 292 (alteration in original) (internal quotation

marks omitted) (quoting Peter F. Gaito, 602 F.3d at 66). The inquiry is more holistic, as the Court "compar[es] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." Id. (second alteration in original) (internal quotation marks omitted) (quoting Peter F. Gaito, 602 F.3d at 66). For copying to be unlawful, the "works must share a similarity of expression, such as 'similarities of treatment, details, scenes, events, and characterization,' " Hogan v. DC Comics, 48 F.Supp.2d 298, 309 (S.D.N.Y. 1999) (quoting Reyher v. Children's Television Workshop, 533 F.2d 87, 91 (2d Cir. 1976) ), or a similarity in their "total concept or feel," id. (quoting Williams v. Crichton, 84 F.3d 581, 589 (2d Cir. 1996) ). **Such an approach allows for a finding of copyright infringement where a defendant has "parrot[ed] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another."** Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003). In this way, the Court's duty is to focus on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Knitwaves Inc., 71 F.3d at 1004 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ).

*Horizon Comics Prods.*, Inc. 246 F. Supp. 3d at 941.  Instead of evaluating the works in their totality, Defendants instead evaluate each specific similarity and seek to discount or distinguish each specific identified similarity. Thus, Defendants state "[t]he Complaint makes clear that Plaintiff's copyright infringement claims are entirely dependent upon a list of ten random, haphazard, and mostly false comparisons." Defendants' Memorandum of Law at p. 15. However, this is incorrect and irrelevant. The Complaint is in fact compliant with Fed. R. Civ P. 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, as Defendants themselves argue, the entire works are what the court is to evaluate on a motion to dismiss. Defendants seeks to have their cake and eat it too – argue that the works are what the court evaluates while at the same time arguing based solely on the allegations of the Complaint.

Defendants would have the Court ignore the proper standard for determination of substantial similarity – "the Court's duty is to focus on whether the alleged infringer has

7

misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1004 (2d Cir.1995). (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ).

When the proper test is applied, it is apparent that there is a triable issue of fact with regard to substantial similarity precluding the grant of Defendants' motion to dismiss.

Plaintiff presented an original depiction of a protagonist with certain key features: (1) a manatee; (2) a laid-back attitude, (3) a human girlfriend, (4) suffering misfortunes as a commentary on life and its travails with irony and black humor.  Defendants produced a protagonist who is (1) a manatee, (2) with a laid-back attitude, (3) has a human girlfriend, (4) suffers misfortunes as a commentary on life and its travails with irony and dark humor.

Plaintiff's work reflect "an original way [of] select[ing], coordinat[ing], and arrang[ing] the elements of his work." Defendants created an Infringing Work that has substantial similarities to the original choices made by the Plaintiff in creating the Work. Thus, properly applied, the standard for dismissal based on lack of substantial similarity is not met by Defendants.

III. <u>There Is Substantial Similarity Between The Work And The Infringing Work Evidenced By The Elements And Aesthetic Decisions In the Respective Works</u>

Defendants wrongly state that:

As discussed above, Plaintiff's infringement claims are based on only ten purported commonalities. His claims are not based on purportedly substantial similarities in the works' plots, characters, settings, themes, and total concept and feel. This is because Happily and Loafy are not even remotely similar in respect of these critical characteristics

Defendants Memorandum of Law at p. 19. In fact, the Complaint sets out a number of characters, themes and elements of total concept and feel that are in fact substantially similar. As previously

8

stated, Plaintiff presented an original depiction of a protagonist with certain key features: (1) a manatee; (2) a laid back attitude, (3) a human girlfriend, (4) suffering misfortunes as a commentary on life and its travails with irony and black humor.  Defendants produced a protagonist who is (1) a manatee, (2) with a laid-back attitude, (3) has a human girlfriend, (4) suffers misfortunes as a commentary on life and its travails with irony and dark humor.

Plaintiff's work reflect "an original way [of] select[ing], coordinat[ing], and arrang[ing] the elements of his work." Defendants created an Infringing Work that has substantial similarities to the original choices made by the Plaintiff in creating the Work. Thus, properly applied, the standard for dismissal based on lack of substantial similarity is not met by Defendants.

Defendants seek to downplay these substantial similarities by arguing that:

> By contrast, Loafy has nothing whatever to do with humanity's impact on its environment in general or the Everglades in particular. The story involves a group of marijuana-smoking animals who reside in a downtrodden zoo in New York City where Loafy, the manatee, is the largest seller of marijuana in the city.

Defendant's Memorandum at p. 17. However, this description overstates the theme of human impact on the Everglades in the Work and understates the general commentary on life contained in the Infringing Work.

First, the Work is not a documentary on the Everglades. It is a cartoon with talking animals including a protagonist who has a human girlfriend. That the protagonist is stoic and laid back in the face of adversity is not a comment on human impact on the Everglades. It is commentary through irony and black humor on life.

Second, the Infringing Work is not a documentary on drug dealing in Central Park Zoo. Again, it has talking animals dealing with human issues. In short, it too is a commentary through

humor on life. It is absurd to pretend it is intended to be taken as commentary on marijuana dealing animals. Defendants' own description of Loafy's episodes demonstrates this:

> In brief, the eight episodes of the series center around: (i) Loafy dealing marijuana and attempting to obtain a harp for his son to play at his pre-school talent show; (ii) Loafy interviewing candidates to become his personal assistant; (iii) Loafy and his animal friends taking over the zoo's Instagram account; (iv) Loafy getting drawn into the world of fantasy role-playing games; (v) Loafy and friends falling under the spell of a hypnotist; (vi) Loafy becoming convinced that his human girlfriend, Becca, is sleeping with Zookeeper Dan; (vii) Loafy going on a diet; and (viii) Loafy putting his chimpanzee friend, Slippy, in charge of the zoo's "neighborhood watch" after a late night incident.

Defendants' Memorandum of Law at p. 21. These are descriptions of human events, albeit through animal characters. The Infringing Works imbue the animal characters with human traits and personality. In short, as stated previously, it is a commentary on life through humor using devices, themes and characteristics that are substantially similar to the Work.

Defendants cite a number of cases for the proposition that "characters that are 'essentially undeveloped stereotypes' or 'constitute a general prototype' are not protectable. *Hudson v Universal Studios*, 2008 WL 4701488 (S.D.NY 2008), at *6 (no copyright ownership in "idea of a horny, sex-seeking, over-the-top, gay character," "tough prison guard" or "young, incarcerated African-American male"); *Allen v. Scholatic,* 739 F. Supp. 2d 642, 659-60 (S.D.N.Y. 2011) ("famous male wizards, initiated late into wizarding (in pre/early adolescence), who receive formal education in wizarding and are chosen to compete in year-long wizard competitions" were general prototypes); *Sheldon Abend Revocable Trust v. Spielberg,* 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010) (although both works involved a "male protagonist, confined to his home, who spies on neighbors to stave off boredom and, in so doing, discovers that one of his neighbors is a murderer," that alone did not demonstrate substantial similarity).

The comparisons are inapt. Tough prison guards, wizards, and nosy neighbors are obvious general prototypes. A talking manatee character as an observation on the vagaries of life is not. Indeed, we are unfamiliar with such character in any known work. In this context, it is important to consider that although the court is empowered at the motion to dismiss stage to make a determination of substantial similarity as a matter of law, the court is still bound to draw reasonable inferences in favor of the non-moving part. *May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 178 (S.D.N.Y. 2019.)

Defendants further inaccurately describe other characters in both the 'work and the Infringing Work.  Defendants describe the characters in generalized terms. For example, Defendants argue "[t]he two human characters in [the Work] are not fleshed out at all. They speak with the inflexion of "surfer dudes" and do nothing but ride around in their speedboat, frequently running over Jukebox." Defendants Memorandum of Law at p. 22. The Work is 4 minutes long so it certainly does not provide a level of detail that might come in a longer format, but nonetheless specific contours are developed in terms of the interactions with the protagonist. They are both the hope and bane of his life. Again, this is part of the dark humor and irony used to provide commentary on life.

Defendants describe the secondary characters of the Infringing Work as much more developed. Thus, for the Defendants, "Becca is Loafy's actual girlfriend, and they interact as though a romantic relationship between a manatee and a human is perfectly normal." *Id.* Similarly, Defendants describe another human character as "apparently [. . .] another animal's ex." *Id.* This is not what can be described as a well-developed character trait. Again, the Defendants fail to consider the totality of the Work and the totality of the Infringing Work when arguing that the two works are not substantially similar.

11

IV. <u>Alternatively The Copyright Claim Survives Under The Fragmented Literal Similarity Test</u>

The Copyright claim would survive a motion to dismiss under the fragmented literal similarity test. In *May*, 399 F.Supp3d at 180-181, this Court described the test as follows:

> [The] "fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." *TufAmerica, Inc. v. Diamond*, 968 F.Supp.2d 588, 597 (S.D.N.Y. 2013) (*citing Newton v. Diamond*, 388 F.3d 1189, 1194 (9th Cir. 2004)) (citing 4 *Nimmer* § 130.03[A][2], at 13-45); *see also Castle Rock*, 150 F.3d at 140 (fragmented similarity test "focuses upon copying of direct quotations or close paraphrasing"); *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 75 n.3 (2d Cir. 1997) (noting that the Second Circuit has "endorsed th[e] taxonomy" distinguishing between "fragmented literal similarity" and "comprehensive nonliteral similarity"). Under the fragmented literal similarity test, "the question of substantial similarity is determined by an analysis of 'whether the copying goes to trivial or substantial elements' of the original work." *TufAmerica*, 968 F.Supp.2d at 598 (citing *Newton*, 388 F.3d at 1195, and *Williams v. Broadus*, No. 99 Civ. 10957, 2001 WL 984714, at *3 (S.D.N.Y. August. 27, 2001)); *see also* 4-13 Nimmer (2017) § 13.03 ("The question ... is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work – not whether such material constitutes a substantial portion of defendant's work.").

> "Both tests ask 'whether 'the copying is quantitatively and qualitatively sufficient' to support a finding of infringement.' " *Estate of Smith*, 253 F. Supp.3d at 748 (quoting *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999)). "It is only where the points of dissimilarity exceed those that are similar and those similar are – when compared to the original work – of small import quantitatively or qualitatively that a finding of no infringement is appropriate." *Gal v. Viacom International, Inc.*, 403 F.Supp.2d 294, 305 (S.D.N.Y. 2005) (*quoting Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992)). But "[b]ecause they involve literal copying, in cases of 'fragmented literal similarity,' more so than under the 'ordinary observer test,' the copying of even a 'relatively small' quantitative 'portion of the pre-existing work may be substantial if it is of great qualitative importance to the [pre-existing] work as a whole.' " *Estate of Smith*, 253 F. Supp.3d at 747 (*quoting TufAmerica*, 968 F.Supp.2d at 597). [. . . ] "Where works 'have both protectible and unprotectible elements [the] analysis must be more discerning and ... [courts] must attempt to extract the unprotectible elements from ... consideration and ask whether the protectible elements, standing alone, are substantially similar.' " *Estate of Smith*, 253 F. Supp.3d at 747 (quoting *Peter F. Gaito*, 602 F.3d at 66) (elipses in original).

12

Applying the fragmented literal similarity test to the protected elements of the Work demonstrates that those elements are of large import qualitatively to the work, As stated previously, Plaintiff presented an original depiction of a protagonist with certain key features: (1) a manatee; (2) a laid back attitude, (3) a human girlfriend, (4) suffering misfortunes as a commentary on life and its travails with irony and black humor.  Defendants produced a protagonist who is (1) a manatee, (2) with a laid-back attitude, (3) has a human girlfriend, (4) suffers misfortunes as a commentary on life and its travails with irony and dark humor.

Plaintiff's work reflect "an original way [of] select[ing], coordinat[ing], and arrang[ing] the elements of his work." Defendants created an Infringing Work that has substantial similarities to the original choices made by the Plaintiff in creating the Work.

Thus, properly applied, the standard for dismissal based on lack of substantial similarity is not met by Defendants.

V.  <u>The Plaintiff Shall Seek Leave to Replead His Lanham Act and State Law Claims</u>

Pursuant to Fed. R. Civ. P. 15(a) (2), the Plaintiff shall seek leave to file an amended pleading regarding his Lanham Act and state law unfair competition claims.

## <u>CONCLUSION</u>

For all the reasons stated herein, Plaintiff respectfully request the Court deny Defendants' Motion to Dismiss the Complaint and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      March 8, 2024

                                  ADWAR IVKO, L.L.C.

                                  Attorneys for Plaintiff

                                  By/  /Armando Llorens/   

                                  Armando Llorens (AL 1757)

                                  225 West 34th Street

                                  Floor 9

                                  New York, New York 10122

                                  (212) 725 - 1818

                                  armando@adwarivko.com