UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
DANIEL KASSEL,

    Plaintiff,

    -*against*-

ROBERT MOYNIHAN, JR., KATIE GLORE, JOSHUA PHELPS, CARTUNA, L.L.P., and COMEDY CENTRAL, a subsidiary of VIACOM, INC.,
    Defendants.
_____X

Case No.: 23-cv-06958-JLR

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I.      INTRODUCTION**

In his Complaint for copyright infringement, Plaintiff Daniel Kassel ("Plaintiff") relied upon a list of ten random, haphazard, and mostly false comparisons between his short, animated work *Happily Everglades After* ("*Happily*") and Moving Defendants' adult animated series *Loafy*. Six of those ten comparisons did not even compare *Happily* to *Loafy*, but instead relied upon either unregistered material created by Plaintiff that is not part of his final work or allegedly preliminary material relating to *Loafy* that is not part of the final series. *See* Complaint (ECF No. 2) at ¶¶ 26-35; *see also* Moving Defendants' Memorandum of Law In Support of Motion to Dismiss Complaint (ECF No. 21) at 6-8, 15-19.[1] And the remaining four comparisons were entirely superficial and did not come close to supporting a copyright infringement claim. *Id.*[2]

No doubt recognizing that his list of alleged similarities was specious, Plaintiff in his Opposition tacks in a different direction. Now, Plaintiff claims that *Happily* and *Loafy* are substantially similar because their respective protagonists purportedly share four, allegedly "key features": "(1) a manatee, (2) a laid-back attitude, (3) a human girlfriend, (4) suffering misfortunes

---

[1] Plaintiff alleged in *Happily*, his character, Jukebox, has a friend who is a small purple and yellow bird. Plaintiff claimed that his "original character design"—not his registered work—showed the bird sitting on Jukebox's head, while in *Loafy*, the manatee wears a small purple and yellow hat. But, Plaintiff's "original character design" is not part of his registered work, and the bird does not sit on Jukebox's head in the registered version of *Happily*. Moreover, a bird is not the same as a hat and colors generally are not protected by copyright. Another example: Plaintiff alleged that *Happily* opens with Jukebox getting run over by a boat and shows the scars on his back that he suffered from this injury. Plaintiff claimed that in Defendants' "proof of concept" for *Loafy*, Loafy is run over by a boat which leaves him with similar scars. Whether or not this is true, Defendants' "proof of concept" for *Loafy* is *not* the allegedly infringing work: only the final version of the series is relevant to Plaintiff's infringement claims, and the final work does not include such a scene.

[2] For example, *Happily* includes a flashback in which the bird character relives the death of his flock, which is reflected in the bird's eyes, while in *Loafy*, an eagle character who is a U.S. war veteran recalls his time in service, with scenes of burning fires reflected in his eyes. In another scene in *Happily*, the bird character burps up his lunch, and a heart on fire intended to be a reference to his heartburn disintegrates in the air; while in *Loafy*, the Loafy character exhales a gust of marijuana in the shape of a broken heart after hearing his girlfriend might be cheating on him.

as a commentary on life and its travails with irony and black humor." (Opp. at 3.)[3]  But these alleged commonalities fare no better than Plaintiff's original list of ten. As explained below, not one of these supposedly "key features" constitutes protected expression: they are all unprotected ideas and concepts.

In the Opposition, Plaintiff also attempts to lean heavily on the notion that the "total concept and feel" of both works are substantially similar and claims that Moving Defendants incorrectly applied the "discerning observer" test for infringement rather than the "lay observer test." But Plaintiff is wrong—both the Defendants' "discerning observer" test and Plaintiff's "lay observer" test are used in the Second Circuit, and the "discerning observer" test applies where, as here, the works in question contain both protectible and unprotectible elements.[4]

But regardless of which test applies and whether the Court compares both protected and unprotected elements or only the protected elements, *Loafy* and *Happily* simply are not substantially similar "in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting." *Williams*, 84 F.3d at 588; *see also Abdin v. CBS Broad., Inc.*, 405 F. Supp. 3d 591, 597 (S.D.N.Y. 2019), *aff'd*, 971 F.3d 57 (2d Cir. 2020) ("In applying either test, the task is to compare holistically the works' total concept and overall feel"). Even if both works contained *all* of Plaintiff's supposedly "key features," those features do not collectively demonstrate that the works are substantially similar in total concept and feel. When the Court compares these works, the significant and substantial differences between them in *both* their protected elements and their total concept and feel will be readily apparent. Thus, Moving

---

[3] Plaintiff repeats these four "key features" like a mantra throughout the Opposition. (*E.g.*, Opp. at 3, 8, 9, and 13.)

[4] In that situation, the Court must inquire "only whether 'the protectible elements, standing alone, are substantially similar.'" *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 309 (S.D.N.Y. 1999); *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (quoting *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).

Defendants' motion should be granted because the works themselves evidence that they are not substantially similar as a matter of law.

## II.    *HAPPILY* AND *LOAFY* ARE NOT SUBSTANTIALLY SIMILAR AS A MATTER OF LAW.

### A.    Any Alleged Similarities That Do Not Appear In One Of The Copyrighted Works Should Be Disregarded.

In both his Complaint and his Opposition, Plaintiff relies on purported similarities that do not appear in either *Loafy* or *Happily.* For example, Plaintiff relies on Moving Defendants' "proof of concept" (Opp. at 3; Compl. at ¶27, 28), on Plaintiff's "original character design" (Opp. at 3; Compl. at ¶26), random images Plaintiff posted on Instagram (Compl. at ¶30), suggestions for a proposed scene by his college classmates (*Id.* at ¶29), and the fact that one of the characters in *Loafy* is named "Dan" while "Daniel" is Plaintiff's name (*Id*. at ¶35). All of these comparisons improperly rely upon either Plaintiff's unregistered works or elements not actually incorporated into *Loafy* and are therefore irrelevant to determining substantial similarity between the works. *Weil–Made Toy Mfg. Corp. v. Goffa Int'l Corp*., 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002), *aff'd sub nom Well–Made Toy Mfg. Corp v. Goffa Int'l Corp*., 354 F.3d 112 (2d Cir. 2003) ("[W]here the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work, but not as to any element original to the unregistered derivative work."). Thus, these elements must be completely disregarded in the Court's substantial similarity analysis.

### B.    Applying Any Test, *Loafy* and *Happily* Are Not Substantially Similar.

Plaintiff argues that the Second Circuit's decision in *Williams v. Crichton* dictates that the applicable test for substantial similarity is "whether a *lay observer* would consider the works as a whole substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996)

(emphasis added). In so doing, Plaintiff incorrectly argues that Moving Defendants' application of the "more discerning" test "is not the law in the Second Circuit." (Opp at 6.) But the Second Circuit does recognize the "more discerning" test—in a case upon which Plaintiff himself relies—*Peter F. Gaito Architecture, LLC*, 602 F.3d 57, 66 (2d Cir. 2010). In that case, the court ruled that "when faced with works 'that have both protectible and unprotectible elements,' our [substantial similarity] analysis must be 'more discerning.'"

That said, under either the "ordinary observer" or "more discerning observer" inquiries, the Court must take a holistic approach and compare the "total concept and overall feel" of the works to determine substantial similarity. *See Peter F. Gaito*, F.3d at 66 (the court is "principally guided by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work" in determining whether the two are substantially similar); *see also Abdin v. CBS Broad., Inc.*, 405 F. Supp. 3d at 597, *aff'd*, 971 F.3d 57 (2d Cir. 2020) ("In applying either test, the task is to compare holistically the works' total concept and overall feel") (internal quotations omitted). The "total concept and feel" of a work refers to the way the author selected, coordinated, and arranged the elements of the work, taking into consideration similarities in "mood, details or characterization." *Reyher v. Childrens Television Workshop*, 533 F.2d 87, 91-92 (2d Cir. 1976).

### 1. *Loafy* and *Happily* Are Not Substantially Similar in Protected Expression.

Where two works contain both protectible and unprotectible elements, the Court must inquire "only whether 'the protectible elements, standing alone, are substantially similar.'" *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 309 (S.D.N.Y. 1999); *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (quoting *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)). Plaintiff claims that *Happily* and *Loafy* are substantially similar because their respective

protagonists purportedly share four allegedly "key features": "(1) a manatee, (2) a laid-back attitude, (3) a human girlfriend, (4) suffering misfortunes as a commentary on life and its travails with irony and black humor." (Opp. at 3.) None of these purported similarities is protectible expression.

An animated manatee character is not protectable in and of itself and does not make substantially similar any two works—even animated works—that feature a manatee. Moreover, the "total concept and feel" of Plaintiff's Jukebox character is entirely different from Moving Defendants' Loafy character. Having a "laid-back attitude" is also not a protectable similarity, and to the extent that "laid-back" fairly describes Loafy, it is purely marijuana induced, so once again the "total concept and feel" of Jukebox is entirely different from Loafy.

In *Happily*, Jukebox absolutely *does not* have a human girlfriend – he merely fantasizes that the girl in the boat that runs over him is his girlfriend – while Loafy *does* have a human girlfriend. "Suffering misfortunes" is not protectible; and even if one could reasonably characterize *any* of Loafy's experiences in the series as "misfortunes," they are entirely different in concept and feel from Jukebox's actual misfortunes. Finally, irony and black humor, even if both manatees use it, is not protectible; and Loafy's humor and sense of irony are entirely different conceptually and in feel from Jukebox's.

    2. ***Loafy* and *Happily* Are Not Substantially Similar In "Total Concept and Feel."**

The "total concept and feel" test looks to how the selection and arrangement of elements create an overall impression of the work. *Reyher*, 533 F.2d at 91-92; *see Jones v. CBS, Inc.*, 733 F. Supp. 748 at 754 (S.D.N.Y 1990). Implicit in this test is that the particular arrangement of elements—whether protectable or not—create the impression on the viewer that the two works are substantially the same. That said, where there is a dearth of similar elements, there is no possibility

for elements to be arranged similarly. Such is the case with *Happily* and *Loafy*. Plaintiff also relies on the same four purportedly "key features" to support his contention that *Happily* and *Loafy* are substantially similar in "total concept and feel." (Opp at 9.) Even if these characterizations of both works were accurate (which they are not for the reasons discussed above), they are insufficient to sustain a claim of substantial similarity based on "total concept and feel" because of the innumerable and significant *dissimilarities* between *Loafy* and *Happily*.

To start, the works are thematically and tonally dissimilar. *Loafy* is an absurdist stoner comedy, delighting in silliness, while *Happily* is bleak and replete with dark irony. The animation styles highlight the differences in mood between the works: *Loafy's* animation has traditional bright colors and cartoony curvature; the characters are drawn with a ballooned cuteness evocative of children's television. Even the gritty, downtrodden zoo setting in *Loafy* has an appealing slovenliness as depicted in this style. *Happily*, conversely, uses crude "stop-motion" animation, meaning the characters look sketched and the movement of both the characters and scenery has a jagged, jerky quality. The muted color palate is accented by bright pinks and purples, undoubtedly surreal. The setting of the Florida Everglades is made flat and small by the stop-motion animation. There are no similarities in mood between *Happily* and *Loafy*.

The tonal differences are similarly reflected in the characterizations of the two protagonists: Loafy has the prototypical Cheech-and-Chong pothead disposition, while Jukebox is dreamy, naïve, and unnervingly optimistic, given the plastic contamination of the Everglades and the mass of scars on his back made by passing speedboats. These dissimilarities are fundamental to the total feel of the work; Loafy provokes wry laughter while Jukebox provokes distress and sympathy. *Hogan v. DC Comics,* 48 F. Supp. 2d 298, 312 (S.D.N.Y. 1999) (in the substantial similarity inquiry, courts look to "the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work]"). Moreover, Loafy has a job as a drug-dealer and

lives among humans, almost *as* a human (as evidenced by his human girlfriend, his living quarters, and his drug-dealing), whereas Jukebox spends his time living as a manatee in the Florida Everglades, and evidently cannot (or, at least, does not) speak to humans. The surface similarity that both protagonists are anthropomorphic animals thus falls apart when analyzed more closely, and in any case, cannot by itself support a claim that the total concept and feel of the works are substantially similar. *See Hogan v. DC Comics,* 48 F. Supp. 2d 298, 312 (S.D.N.Y. 1999) (even though protagonists in both works had the same name, both were half-human and half-vampire, appeared to be in their early twenties and shared other "characteristics common to a great many 'Generation X' post-adolescents," these were all unprotectable elements).

The respective plots also have a markedly different concept and feel. *Loafy* follows its protagonist on his lighthearted endeavors, like acquiring a harp for his son to play at his school's talent show, taking over the Instagram account of the zoo in which he resides and getting drawn into the world of fantasy roleplaying games. Moreover, Loafy interacts throughout the series with a wide variety of characters, both anthropomorphic zoo animals and humans, so the concept and feel of the plot of each episode is driven not simply by Loafy and his personality, but by actual storylines filled with many other characters and their personalities.

By contrast, Jukebox is not shown participating in any adventures of any sort, and the only character with whom he interacts directly is his bird-friend. (The man and woman in the boat drive by and over Jukebox, but do not interact with him.) The four-minute short mostly contains Jukebox and his new bird-friend talking about their environment. The concept and feel of *Happily*'s plot thus rest on the personalities of these two characters, with Jukebox's naivety starkly contrasted with his bird-friend's realistic perspective of what is going on around them: that is, that human beings are not their friends.

Plaintiff argues that the two plots are similar because both protagonists are manatees with human girlfriends. But Loafy is seen interacting with his girlfriend—indeed, an entire episode is dedicated to his fear that she is cheating on him—and they have an established relationship. Jukebox, on the other hand, only has a girlfriend in his imagination; the human woman depicted in *Happily* is not even aware Jukebox exists. Even were the Court to credit the purported similarity of the "human girlfriend," this singular plot element is plainly insufficient to establish substantial similarity, and the concept and feel of the "human girlfriend" story element is very different in the works. *See Rehyer*, 533 F.2d at 89, 92 (no substantial similarity despite an "identical sequence of events" with both works describing a lost child who has difficulty finding his mother because his description of her as the most beautiful woman in the world does not, at least to strangers, comport with the "homely woman" with whom he is ultimately reunited).

The mood, themes, setting, visual style, dialogue, characterization, and plot are all vastly different—no arrangement thereof could suddenly make the works substantially similar under the "total concept and feel test." For that reason, Plaintiff's copyright infringement claims fail as a matter of law and should be dismissed with prejudice.

C. **Plaintiff Misapplies The "Fragmented Literal Similarity Test" Because He Does Not Allege Literal or Exact Copying.**

In a last-ditch effort to avoid dismissal, Plaintiff improperly applies the "fragmented literal similarity" test in Section IV of his Opposition. In *May v. Sony Music Entertainment*, the court stated that "fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work *exactly or nearly exactly*, without appropriating the work's overall essence or structure." 399 F. Supp. 3d 169, 180 (S.D.N.Y. 2019) (emphasis added); *see also Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998) ("[T]he 'fragmented literal similarity' test . . . focuses upon copying of direct quotations or close paraphrasing.").

The fragmented literal similarity test does not apply here because Plaintiff does not allege literal copying. Instead, Plaintiff merely parrots the same list of four supposed "key features" (*i.e.*, "(1) a manatee, (2) a laid back attitude, (3) a human girlfriend, (4) suffering misfortunes as a commentary on life and its travails with irony and black humor") that he used in both the "ordinary observer" and "total concept and feel" portions of the Opposition. These general alleged similarities are grossly insufficient to sustain a claim of fragmented literal similarity, which requires "*exact copying* of a portion of a work." *Paramount Pictures Corp. v. Carol Pub. Grp.,* 11 F. Supp. 2d 329, 333 (S.D.N.Y. 1998) (emphasis added). A review of the works themselves demonstrate there is no (even brief) sequence that is identical between the works. Plaintiff's copyright claims thus fail under this test, as well.

## III. CONCLUSION

Moving Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

Dated:   March 29, 2024

By:   */s/ David Halberstadter*
David Halberstadter (*Admitted pro hac vice*)
Amelia E. Bruckner (*Admitted pro hac vice)*
Katten Muchin Rosenman LLP
2021 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: 310.788.4400
Facsimile: 310.788.4471
Email: david.halberstadter@katten.com
Email: amelia.bruckner@katten.com

Mark T. Ciani
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, New York 10020-1605
Telephone: 212.940.6509
Facsimile: 212.940.8774
Email: mark.ciani@katten.com

*Attorneys for Moving Defendants*