UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL KASSEL,

Plaintiff,

-against-

ROBERT MOYNIHAN, JR. et al.,

Defendants.

Case No. 1:23-cv-06958 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Daniel Kassel ("Plaintiff") alleges that his original creative work, born of his "lifelong love of manatees" and his "deeply personal experiences with bullying and abuse," was copied by Robert Moynihan, Jr., Cartuna LLC ("Cartuna"),[1] and Comedy Partners ("Comedy Central"[2] and, together with Moynihan and Cartuna, "Defendants") when they created and distributed the animated series *Loafy*. ECF No. 4 ("Compl." or the "Complaint") at 2. Now before the Court is Defendants' motion to dismiss the Complaint. ECF No. 21 ("Br."). For the following reasons, the motion is GRANTED.

## BACKGROUND

### I. Factual Background[3]

#### A. Development of *Happily Everglades After*

In 2013, Plaintiff created a YouTube channel called "Jukebox Manatee," which showcased his cartoon project starring the eponymous manatee character Jukebox Manatee.

---

[1] Plaintiff brought this action against "Cartuna, L.L.P."; Defendants state that this was a misspelling of the entity named "Cartuna LLC." Br. at 1.

[2] Plaintiff brought this action against "Comedy Central, a subsidiary of Viacom, Inc."; Defendants state that this was a misspelling of the entity named "Comedy Partners." *Id.*

[3] Unless otherwise noted, the facts stated herein are taken from the Complaint and accepted as true for the purposes of resolving Defendants' motion to dismiss. *See DiFolco v. MSNBC*

Compl. ¶ 9.  In 2018, while enrolled at the Pratt Institute, Plaintiff developed his "Jukebox Manatee" idea into a pitch for what eventually would become his final product, *Happily Everglades After* ("*Happily*").  *Id.* ¶ 10.

"In February 2018, Plaintiff presented the idea, animatic, storyboards, and character designs of [*Happily*] to a classroom of students at Pratt Institute."  *Id.* ¶ 11.  The following month, Plaintiff pitched *Happily* "in the Pratt Institute theater at Myrtle Hall to invited guests in attendance, including agents and industry professionals."  *Id.* ¶ 12.  At the time, Plaintiff did not have a "planned ending" for his creative work, but "in brainstorming with the audience of students, he discussed his idea that the manatee and bird characters may wake as if from a dream at the end of the story, in their human style apartment in water, sitting on a couch together."  *Id.* ¶ 13.  Plaintiff continued to work on the idea and presented iterations of *Happily* to "audiences comprised of his classmates, industry professionals, and guests at Myrtle Hall" on at least six occasions between May 2018 and March 2019.  *Id.* ¶ 14.  The final version of *Happily* was screened at the Pratt Institute's graduation "All Animation Show" on May 14, 2019.  *Id.* ¶ 15.

Plaintiff continued post-production work on *Happily* until October 2019, when he "began to submit [it] for inclusion in film festivals and promote [it] publicly."  *Id.* ¶ 16.

---

*Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).  The Court also considers the two works at issue in this case, which were integral to the Complaint and provided to the Court at ECF Nos. 22-1 ("*Happily*") and 22-2 ("*Loafy*").  *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (in a copyright action where the works at issue are submitted for the court's review, "it is entirely appropriate for the district court" to consider the works themselves "in connection with a motion to dismiss"); Br. at 11-12 (Defendants asserting that "[w]ith respect to copyright infringement claims, courts are permitted to review and compare the allegedly infringed and the allegedly infringing works" and make a determination as to substantial similarity on a motion to dismiss); ECF No. 41 at 16:24-17:3 (Plaintiff agreeing that this "is the law in our circuit").

*Happily* premiered at the New Jersey International Film Festival in September 2020.  *Id.* ¶ 18.  Subsequently, Plaintiff posted *Happily* to his YouTube channel, *id.*, and registered it with the U.S. Copyright Office, *id.* ¶¶ 38-39.  Plaintiff's copyrighted final work is a four-minute-long animated short.  *See Happily*.

### B.  Alleged Copying

In August 2020, Plaintiff learned about *Loafy*, Defendants' animated series centered on a manatee character named Loafy.  Compl. ¶¶ 19, 34.  Joshua Phelps, Plaintiff's classmate at the Pratt Institute who attended Plaintiff's previous presentations of *Happily*, has worked since 2018 as an animator at Cartuna, where he worked on *Loafy*.  *Id.* ¶¶ 20, 22.  Katie Glore, another of Plaintiff's classmates who attended these presentations, also worked for Cartuna. *Id.* ¶¶ 21, 23.

Plaintiff alleges that Cartuna and Comedy Central, through their agents and employees Phelps and Glore, accessed and copied "the artistic styles, characters, plots, and themes" of *Happily* and produced "a substantially similar version" of it as *Loafy*.  *Id.* ¶ 42.  Later in this opinion, the Court examines the works themselves in further detail.[4]

## II.   Procedural History

Plaintiff brought this action on August 7, 2023.  *See generally id.*  Initially, Plaintiff also sued Glore and Phelps, *id.* at 1, but voluntarily dismissed them in November 2023, ECF Nos. 17-18.  Defendants filed the instant motion to dismiss on January 5, 2024.  Br.  Plaintiff opposed the motion on March 8, 2024.  ECF No. 36 ("Opp.").  Defendants replied in support

---

[4] Several allegations in the Complaint do not relate to the works themselves, but rather to Defendants' "proof of concept," Plaintiff's "original character design," Plaintiff's "proposed scene," and Plaintiff's Instagram posts.  Compl. ¶¶ 26-30.  Plaintiff affirmed during oral argument that those allegations are not relevant to the instant motion, and that for this motion he relied on only "what is . . . included in the actual copyright."  ECF No. 41 at 15:24-16:11. The Court therefore does not recount those allegations here.

of their motion on March 29, 2024.  ECF No. 37 ("Reply").  The Court heard oral argument

on the motion on May 17, 2024.  ECF No. 41 ("Tr.").

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule")

12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court draws all

reasonable inferences in the plaintiff's favor and accepts as true all non-conclusory allegations

of fact.  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).

However, a court need not "accept as true a legal conclusion couched as a factual allegation."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must allege "more

than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are

'merely consistent with' a defendant's liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the

weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952

F.3d 67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense."  *Iqbal*, 556 U.S. at 679.

In considering a Rule 12(b)(6) motion, "district courts may review only a narrow

universe of materials, which includes facts stated on the face of the complaint, documents

appended to the complaint or incorporated in the complaint by reference, matters of which

judicial notice may be taken, as well as documents not expressly incorporated by reference in

the complaint that are nevertheless 'integral' to the complaint."  *Clark v. Hanley*, 89 F.4th 78,

93 (2d Cir. 2023) (brackets, further quotation marks, ellipsis, and citation omitted); *see id.* at

93 n.18 (material "may be deemed 'integral' to the complaint when the complaint relies heavily upon its terms and effect" (further quotation marks and citation omitted)). "Where a document is referenced in a complaint, the documents control and [the court] need not accept as true the allegations in the . . . complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quotation marks and citation omitted).

## DISCUSSION

Plaintiff brings four causes of action, all staked on Defendants' alleged copying of *Happily*. Compl. ¶¶ 36-60. Plaintiff first brings two claims of copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*: one against all Defendants, *id.* ¶¶ 36-44, and another against only Comedy Central, *id.* ¶¶ 45-48. Plaintiff also claims unfair competition against all Defendants under the Lanham Act, 15 U.S.C. § 1051 *et seq. Id.* ¶¶ 49-55. Finally, Plaintiff brings a cause of action against all Defendants for deceptive acts and practices under Section 349(a) of the New York General Business Law. *Id.* ¶¶ 56-60.

Defendants seek to dismiss all of Plaintiff's claims, pointing to a lack of substantial similarity of protected expression between *Happily* and *Loafy*. Br.; Reply. The Court analyzes each cause of action in turn.

## I.   Copyright Infringement (Counts 1 and 2)

Plaintiff's first two claims are both for copyright infringement and brought under the Copyright Act. Compl. ¶¶ 36-48.[5] Plaintiff alleges that he is the author of his creative work, *Happily*, and that he received from the Register of Copyrights a certificate of registration of

---

[5] These counts are not distinguishable, except that the first count is brought against all Defendants (including Comedy Central), while the second is brought only against Comedy Central. Compl. ¶¶ 36-48. Plaintiff confirmed during oral argument that these counts were duplicative. Tr. at 16:13-22. The Court therefore treats Count 2 as duplicative of Count 1.

his copyright in the work.  *Id.* ¶¶ 38-39.  Plaintiff alleges that Defendants infringed his

copyright when they produced and distributed the animated series *Loafy*.  *Id.* ¶¶ 41-44, 47-48.

### A.  Applicable Law

"To establish a claim of copyright infringement, 'two elements must be proven:

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original.'"  *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  To satisfy the second

element, a plaintiff must show that "(1) the defendant has actually copied the plaintiff's work;

and (2) the copying is illegal because a substantial similarity exists between the defendant's

work and the protectible elements of plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone*

*Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted).  "The standard test for

substantial similarity between two items is whether an 'ordinary observer, unless he set out to

detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as

the same.'"  *Peter F. Gaito Architecture*, 602 F.3d at 63 (brackets omitted) (quoting *Yurman*

*Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)); *accord Abdin*, 971 F.3d at 66.

Because copyright law protects only "the expression of ideas" and "not the ideas themselves,"

however, certain elements of works may not be copyrightable.  *Peter F. Gaito Architecture*,

602 F.3d at 67.  When a work contains "both protectible and unprotectible elements," the

court "must be more discerning" and "attempt to extract the unprotectible elements from . . .

consideration and ask whether the protectible elements, standing alone, are substantially

similar."  *Id.* at 66 (quotation marks and citation omitted); *accord Abdin*, 971 F.3d at 66.

Regardless of which test is applied, the court must faithfully "examine the similarities in such

aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting."

*Abdin*, 971 F.3d at 66 (quoting *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996)).

Courts in this District apply the alternative "fragmented literal similarity" test when the plaintiff alleges that the "defendant copie[d] a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 597 (S.D.N.Y. 2013) (citation omitted).  In cases involving "fragmented literal similarity," "the question of substantial similarity is determined by an analysis of whether the copying goes to trivial or substantial elements of the original work" as "measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole."  *Id.* at 598 (quotation marks, citations, and emphasis omitted).

## B.  Analysis

Defendants argue that these claims should be dismissed because there is a lack of substantial similarity of protected expression between *Happily* and *Loafy*.  *See* Br. at 9-15. Although Defendants "dispute that they ever obtained legally cognizable access to Plaintiff's work, whether through Defendants Phelps and/or Glore or otherwise," they do not challenge, at least on this motion, "the legal sufficiency of Plaintiff's access allegations."  *Id.* at 11 n.10. Therefore, the Court accepts as true the allegation that Defendants had access to Plaintiff's work for purposes of assessing copying and will only analyze whether a substantial similarity exists between the protectable elements of Plaintiff's copyrighted material, *Happily*, and those of Defendants' allegedly infringing work, *Loafy*.

### 1.  Applicable Test

The parties dispute the applicable test for assessing substantial similarity in this case. Defendants assert that the "discerning ordinary observer" test applies, *id.* at 12, while Plaintiff asserts that the applicable test is whether "a lay observer would consider the works as a whole substantially similar to one another," Opp. at 5 (citation omitted).  The Court agrees with

Defendants that the "discerning ordinary observer" test applies here because, as set forth below, the copyrighted work "incorporates unprotectible elements." *Abdin*, 971 F.3d at 66. Under both the discerning ordinary observer test and the ordinary observer test, the Court must "examine the similarities" between the works "in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting." *Williams*, 84 F.3d at 588; *see* Opp. at 5 (citing *Williams*, 84 F.3d at 590, as articulating "the proper legal standard").

### 2. Unprotectable Material in Plaintiff's Work

At least three limitations on copyright protection are relevant to Plaintiff's claims. "First, facts and ideas are not protected by copyright." *Abdin*, 971 F.3d at 67; *see Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004) ("[C]opyright does not protect ideas; it protects only the author's particularized expression of the idea."). Second, copyright also does not protect scenes a faire, which are "sequences of events which necessarily follow from a common theme" and "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Abdin*, 971 F.3d at 67 (citations omitted). Third, "generic and generalized character traits such as race, gender, and hair color are not protectible." *Id.*

Plaintiff urges that the "key features" showing substantial similarity between his work and Defendants' work are: (1) a manatee protagonist, (2) with a laid-back attitude, (3) who has a human girlfriend, and (4) who "suffers misfortunes as a commentary on life and its travails with irony and black humor." Opp. at 8. The Court examines these four "key features" and concludes that each, at least in part, is not protectable expression.

As to the first two features, the fact that Plaintiff's work contains a manatee with a laid-back attitude is far too generalized to be protectable. Courts in this District regularly deny character infringement claims with more similar and specific characteristics and features

than here.  *See, e.g.*, *Cabell v. Sony Pictures Ent., Inc.*, 714 F. Supp. 2d 452, 459, 461

(S.D.N.Y. 2010) (common idea of "a soldier leaving military service to become a hair dresser

but continuing to use his military skills" is unprotectable, as is the concept of wielding a

hairdryer as a weapon), *aff'd*, 425 F. App'x 42 (2d Cir. 2011) (summary order); *Hudson v.*

*Universal Studios, Inc.*, No. 04-cv-06997 (GEL), 2008 WL 4701488, at *6 (S.D.N.Y. Oct. 23,

2008) (plaintiff "cannot claim creative ownership of the idea of a horny, sex-seeking, over-

the-top gay character" who is incarcerated and of a certain race), *aff'd*, 369 F. App'x 291 (2d

Cir. 2010) (summary order); *Alexander v. Murdoch*, No. 10-cv-05613 (PAC), 2011 WL

2802923, at *5 (S.D.N.Y. July 14, 2011) (adult characters with tendencies to "act in childish

ways" or who do "not conform to gender stereotypes" are not copyrightable), *aff'd*, 502 F.

App'x 107 (2d Cir. 2012) (summary order); *Sheldon Abend Revocable Tr. v. Spielberg*, 748 F.

Supp. 2d 200, 209 (S.D.N.Y. 2010) (middle-aged male neighbors suspected of killing a

woman is simply "a basic character type" that "do[es] not rise to the level of protectible

expression").  The general character idea of a "manatee" with a "laid-back attitude," as

depicted in Plaintiff's work, is not protectable through copyright.[6]  Moreover, as examined in

further detail below, the manatee characters and their attitudes differ significantly in their

overall concept and feel.

---

[6] Plaintiff argues that the cases cited by Defendants are "inapt" because "a talking manatee character as an observation on the vagaries of life is not" an "obvious general prototype[]." Opp. at 11.  However, the Court is aware of numerous series and films featuring various species of talking animals – including, for example, *Family Guy* (talking dog), *Rick and Morty* (talking cat), *BoJack Horseman* (talking horse) and *Guardians of the Galaxy* (talking raccoon) – and many of those works could be characterized as providing "observation[s] on the vagaries of life."  On its own, a particular species of talking animal that makes observations on the vagaries of life is nothing more than a generalized character type.  Despite his protestations, Plaintiff's four-minute cartoon short does not entitle him to exclusive copyright protection over all works with a talking manatee.  *See* Tr. at 12:22-13:2 (confirming Plaintiff's position that he "has protectable rights over any manatee that philosophizes about life").

The third "key feature" claimed by Plaintiff, "a human girlfriend," is an even more basic, unprotectable character type. *See, e.g.*, *Abdin*, 971 F.3d at 72 (both works had "black females with curly short brown hair" and "blonde white males who are scientists," but such traits were "generic and common" and therefore not protectable); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311 (S.D.N.Y. 1999) ("half-vampire and half-human" characters were non-protectable ideas in the public domain); *Sheldon*, 748 F. Supp. 2d at 209 (middle-aged male neighbors suspected of killing a woman were simply "a basic character type"). Moreover, in Plaintiff's work, the manatee character does not even have a human girlfriend; rather, the manatee character gets run over by a boat driven by a man with a female passenger, and the manatee fantasizes that the female passenger is his girlfriend. *See Happily*. Thus, the only similarity in this regard is that both works have a female human character who is the object of the manatee's affection. A generalized female human character, with whom an animal main character is enamored, is not protectable under copyright law. *See Alexander*, 2011 WL 2802923, at *5 (beautiful, fiery, temperamental Latina mother married to or previously married to white male characters was a "stock character"); *Hudson*, 2008 WL 4701488, at *6 ("no similarity in protectable expression" where the only similarities between two characters "are their race, their apparent sexual orientation, and the fact that they are incarcerated").

Finally, Plaintiff's concept of a character who "suffers misfortunes as a commentary on life and its travails with irony and black humor" is an unprotectable, basic stock theme. Opp. at 8. Courts regularly find that works with significantly more specificity in this regard encompass unprotectable concepts or scenes a faire. *See, e.g.*, *Mallery v. NBC Universal, Inc.*, No. 07-cv-02250 (DLC), 2007 WL 4258196, at *6 (S.D.N.Y. Dec. 3, 2007) ("(1) painting a future in which tragic and destructive events take place, such as the destruction of landmark buildings in New York City; (2) having a prediction confirmed by a

newspaper report; and (3) making an attempt to prevent a tragic event in light of a prediction of the future, are simply *scenes a faire,* or sequences of events that necessarily result from the choice of a setting or situation, which do not enjoy copyright protection" (brackets, quotation marks and citation omitted)), *aff'd*, 331 F. App'x 821 (2d Cir. 2009) (summary order); *Allen v. Scholastic*, 739 F. Supp. 2d 642, 662-64 (S.D.N.Y. 2011) (plot features of wizard protagonists participating in a wizarding competition in a castle "constitute scenes a faire that flow naturally from a work's theme rather than from an author's creativity" (quotation marks and citation omitted)); *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1262 (S.D.N.Y. 1995) (elements depicting the main character reliving the same day, such as "beginning . . . each day with the main character awakening to the sound of his alarm clock; the repetition of actions, conversations, and events . . . are necessary aspects of the situation of a repeating day and, therefore, constitute unprotected *scenes a faire*").  A main character who "suffers misfortunes as a commentary on life and its travails with irony and black humor," Opp. at 8, is no more original.  That a character who has undergone unspecified "misfortunes" experiences those misfortunes "as a commentary on life and its travails with irony and black humor," *id.*, "flow[s] naturally from [the] work's theme rather than from [the] author's creativity," *Allen*, 739 F. Supp. 2d at 663.  Moreover, to the extent that both works utilize "irony and black humor," Opp. at 8, the works differ significantly in their overall concept and feel, as examined below.

In sum, to the extent that similarities exist in the "key features" of *Happily* and *Loafy*, those features are largely unprotectable.

### 3.  Total Concept and Feel

Even if the unprotectable elements were considered and even if the Court applied the ordinary observer test, the total concept and feel of the two works are not substantially similar.

*Type of Work:*  *Loafy* is an eight-part animated series containing more than ten characters with developed identities and backstories.  Each episode contains a standalone plot with an identifiable, and variable, arc.  *See Loafy*.  By contrast, *Happily* is a four-minute animated video with four characters.  *See Happily*.

*Style:*  *Loafy* is drawn with bright colors and balloon-like curves; the animations have a child-like cartoon appeal.  *See Loafy*.  *Happily* utilizes "stop-motion" animation, which involves shaky characters that appear to be sketched with a jagged quality.  *See Happily*.

*Setting:*  *Loafy* is set in the dilapidated "Center Park Zoo," which is adjacent to New York City's Central Park Zoo.  *See Loafy*.  The manatee character, Loafy, lives in a tank in the zoo with his manatee son, Beef.  *Id.*  Loafy's tank has human furniture, such as a couch and television set, and is partially underwater.  *Id.*  *Happily* is set in the middle of the Florida Everglades and features no apartment or furniture.  The humans live above water and the manatee character, Jukebox Manatee, lives underwater.  *See Happily*.

*Main Character:*  The main characters in both works are manatees.  However, in Defendant's work, Loafy is a foul-mouthed and crude drug dealer who converses with human characters and uses human technology.  *See Loafy*.  Loafy has a human girlfriend named Becca and a manatee son named Beef.  *Id.*  In Plaintiff's work, Jukebox Manatee does not use crude language, does not appear to have an occupation, does not talk with human characters, and does not use human technology.  *See Happily*.  Jukebox Manatee converses only with one character, a bird with apparent psychological issues caused by a traumatic event.  *Id.*  Jukebox Manatee slaps his belly while speaking and is depicted beatboxing.  *Id.*  Loafy does not regularly slap his belly while speaking, and never while beatboxing music is playing; rather, he makes various anthropomorphic gestures with his manatee-arms.  *See Loafy*.  Loafy never beatboxes himself, although music with beatboxing noises occurs in one episode.  *Id.*

12

Jukebox Manatee appears optimistic despite being run over and physically scarred by humans in a boat.  *See Happily*.  Loafy does not experience similar abuse from humans.  *See Loafy*.

*Other Characters:  Loafy* includes numerous human characters who converse in English with animal characters.  Of particular relevance here, Loafy has a red-haired, freckled human girlfriend named Becca; their relationship has ups and downs throughout the series. *See Loafy*.  For example, in one episode, Becca attends a musical performance by Loafy's son, Beef, and livestreams the performance to Loafy so he can watch from his living room.  *Id.*  In another episode, Loafy is concerned that Becca has been unfaithful to him.  *Id.*  By contrast, *Happily* includes only two human characters, who converse only with each other and do not interact with the animal characters.  *See Happily*.  The two human characters are a male and a female, both shown wearing bathing suits and sunglasses on a boat in the Florida Everglades. *Id.*  The male character drives a boat over Jukebox Manatee, injuring him, and the female character expresses a feeling of sadness.  *Id.*  The female character is blonde, wears sunglasses covering much of her face, does not have any other interactions with Jukebox Manatee, and is not depicted as being in a relationship with him.  *Id.*  Jukebox Manatee converses with only one character, a bird with a traumatic past.  *Id.*

*Messaging, Tone, and Theme:*  The works are vastly different in messaging, tone, and theme.  *Loafy* offers crude humor involving drugs and seems designed to leave the viewer laughing.  *See Loafy*.  *Happily* is darker and, in the words of Plaintiff, offers the viewer "a commentary on life," Opp. at 10, putting "a spotlight on the mistreatment of manatees, the environment and other wildlife," Compl. at 2.  In contrast to *Loafy*, *Happily* seems designed to leave the viewer with a bleak and distressed mood, although perhaps hopeful of environmental changes.  *See Happily*.

Therefore, regardless of which test is applied, the total concept and feel of the works are not substantially similar as a matter of law.

### 4. Fragmented Literal Similarity

Plaintiff's alternative argument that his copyright claim survives under the fragmented literal similarity test also misses the mark.  Opp. at 12-13.  "[C]ases of fragmented literal similarity" "involve literal copying."  *May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 181 (S.D.N.Y. 2019) (quotation marks and citation omitted); *see also Williams v. Broadus*, No. 99-cv-10957 (MBM), 2001 WL 984714, at *3-4 (S.D.N.Y. Aug. 27, 2001) (applying fragmented-literal-similarity test where small amounts of copyrighted material were exactly or nearly exactly copied).

This test is not applicable here because Plaintiff does not allege any "literal copying," *May*, 399 F. Supp. 3d at 181 (citation omitted), or that Defendants copied "exactly or nearly exactly" any portion of his work, *TufAmerica*, 968 F. Supp. at 597.  Rather, Plaintiff urges the Court to find substantial similarity based on the four "key features" of his protagonist, each of which are generalized elements that relate to the work's overall essence and structure.  *See generally* Opp.  Moreover, the Court has reviewed the works themselves, and has observed that there are no sequences – even brief sequences – in the works depicting exact or nearly exact copying.  Thus, Plaintiff's alternative argument that the motion to dismiss should be denied under the "fragmented literal similarity" test fails.

*          *          *

For these reasons, Plaintiff's claims for copyright infringement are dismissed.

## II.   Unfair Competition (Count 3)

Plaintiff's third claim is for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Compl. ¶¶ 49-55.  Plaintiff alleges that he is the "sole proprietor of all

right, title, and interest in and to" his copyrighted material, and that Defendants are "falsely

describing the origin of the[ir] infringing work as conceived of by Defendants . . . thereby

palming off Plaintiff's work as that of Defendants."  *Id.* ¶¶ 52-53 (further capitalization

omitted).  Plaintiff further alleges that Defendants' alleged actions have caused confusion and

mistake, and deceived consumers as to *Loafy*'s origin.  *Id.* ¶ 54.

## A.  Applicable Law

Section 43(a) of the Lanham Act provides a cause of action against a person who:

> uses in commerce any word, term, name, symbol, or device, or
> any combination thereof, or any false designation of origin,
> false or misleading description of fact, or false or misleading
> representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or
> > to deceive as to the affiliation, connection, or association
> > of such person with another person, or as to the origin,
> > sponsorship, or approval of his or her goods, services, or
> > commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion,
> > misrepresents the nature, characteristics, qualities, or
> > geographic origin of his or her or another person's
> > goods, services, or commercial activities.

15 U.S.C. § 1125(a).

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), the

Supreme Court explained that Section 43 of the Lanham Act protects "tangible goods that are

offered for sale, and not . . . any idea, concept, or communication embodied in those goods."

This is because "[t]o hold otherwise would be akin to finding that § 43(a) created a species of

perpetual patent and copyright, which Congress may not do."  *Id.*

## B.  Analysis

Defendants assert that this cause of action should be dismissed because "the Lanham

Act's proscriptions against false designations of origin and unfair competition apply only to

tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  Br. at 24 (quotation marks and citation omitted).

Plaintiff presents no arguments in opposition to Defendants' motion as to his Lanham Act claim and instead simply states that he "shall seek leave to file an amended pleading regarding his Lanham Act . . . claim[]."  Opp. at 13.  Therefore, this claim is dismissed.  *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

## III.   Deceptive Acts and Practices (Count 4)

Plaintiff brings a final claim of deceptive acts and practices under Section 349(a) of New York's General Business Law, N.Y. Gen. Bus. Law § 349(a).  Compl. ¶¶ 56-60. Plaintiff alleges that Defendants "affirmatively acted to appropriate" *Happily* through "false and misleading representations as to the origin of the [allegedly] infringing work" and "through affirmative acts, representations and omissions . . . falsely represent[ed] the [allegedly] infringing work as being conceived of by Defendants, . . . thereby misleading consumers to perceive Plaintiff's work as that of Defendants."  *Id.* ¶¶ 58-59 (further capitalization omitted).

### A.  Applicable Law

Section 349(a) of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  N.Y. Gen. Bus. Law § 349(a).

Section 301(a) of the Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by [the Copyright Act]."  17 U.S.C. § 301(a); *see Briarpatch Ltd., L.P.*

*v. Phx. Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) ("The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act . . . and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law.").

### B. Analysis

Defendants argue that Plaintiff's state-law claim should be dismissed "because [it] alleges no 'additional element' beyond purported infringement, [and is therefore] preempted by the Copyright Act." Br. at 24. Plaintiff again does not respond to this argument, instead stating that he "shall seek leave to file an amended pleading regarding his . . . state law unfair competition claim[]." Opp. at 13. Thus, this claim is dismissed. *See Curry Mgmt. Corp.*, 643 F. Supp. 3d at 426.

## IV. Leave to Amend

Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted).

Plaintiff does not seek leave to amend his copyright claims, acknowledging that it would be futile to amend those claims if the Court finds there is no substantial similarity between the works as a matter of law. *See* Tr. at 17:8-14. Indeed, because the copyrighted work and the allegedly infringing work are not substantially similar as a matter of law, a copyright infringement claim cannot stand, and amendment of those claims would be futile. *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999) ("[A] district

court may properly deny leave when amendment would be futile."). Thus, Plaintiff's copyright claims are dismissed without leave to amend.

Plaintiff does, however, seek "leave to file an amended pleading regarding his Lanham Act and state law unfair competition claims." Opp. at 13. Plaintiff provided no indication of how amendment would cure his pleading deficiencies for either claim in his opposition brief. *See generally id.* During oral argument, Plaintiff relayed somewhat vague assertions of how he would replead to add "courses of conduct" and "deceptive" practices that were "outside" of his copyright claims. Tr. at 18:2-19:17. While Plaintiff should have been more specific about the allegations he seeks to include on amendment, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint"), the Court will nonetheless grant Plaintiff leave to amend given that he has not amended the Complaint previously, *see Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362-65 (2d Cir. 2023).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 20. Plaintiff is granted leave to amend the Complaint with respect to his Lanham Act and state law unfair competition claims within 21 days of this Opinion and Order. Should Plaintiff fail to amend the Complaint by that date, the Court will close the case.

Dated: June 3, 2024
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge